KEY *v.* BRIAR HILL COLLIERIES.

(*Nashville*, December Term, 1933.)

Opinion filed Feb. 24, 1934.

C. J. CULLOM, of Livingston, for appellant.

J. T. WHEELER, of Jamestown, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The amount of the award only is questioned on appeal by the company in this compensation case. It is insisted that the undisputed evidence shows that "the injury which petitioner received was confined to his foot and not to his leg," and that the court erred in allowing an award on the basis provided by the statute for loss of a leg. The "loss of the use of a member shall be considered as equivalent to the loss of that member." Section 28, Public Acts of 1919, chapter 123.

Key, fifty-one years old, testified that, while helping to push a coal car in the mines, his "foot slid under the tie and shoved me back and the car run on me." Further: "What part of your body was hurt? A. I got my ankle broken. The Doctor (Dr. Eve, to whom he was sent by a Company representative) . . . said my leg was broken across there and my ankle bursted, and the joint disconnected," etc. He is asked, "Did the car run over your foot or ankle? A. Yes, it run over my leg while my foot was fastened on the tie." He further testified that he was in the hospital for some weeks, his leg in plaster, and that he was totally disabled for eight months and since that time could not do hard labor. Dr. Collins ex-

amined him during the trial and testified that, in his opinion, he had a permanent injury. He was asked, on examination, "You examined this foot about the time it was injured? A. Yes, sir." "Q. That injury he actually received was limited to the foot and ankle? A. It was a fracture of the bones from his knee to his ankle." "Q. And no injury above the knee? A. No, sir."

For loss of a foot the statute allows 125 weeks, and for a leg 175 weeks. The trial judge thought the proof showed loss of the use of the leg and fixed 175 weeks. *Black Diamond Collieries* v. *Carden,* 150 Tenn., 336, 265 S. W., 541, and *Ezell* v. *Tipton,* 150 Tenn., 300, 264 S. W., 355, relied on by the company, were cases of amputation, one of the foot and the other of the hand, and in the Black Diamond Case the court expressly found that "there was no injury above the ankle." The holding was, while the amputation was made some inches above the ankle, that this was in order to give better use of the leg following amputation of the foot. In the Ezell Case the majority of the court felt controlled by the finding of the trial judge, who saw and examined the petitioner and found that he had lost a hand only. Moreover, in cases of amputation of a hand or a foot the loss of use is chiefly of the amputated member, the arm or leg, as distinguished from their amputated natural contributory extremities, the hand or foot, remaining for use as such.

The true rule, as adopted by our cases, is that "an employee suffers total disability as to the members or faculties injured whenever his capacity to earn by the use of those members or faculties has been practically destroyed. . . . The principle underlying this legislation is substitution of compensatory income for loss of earning capacity, proportioned to the loss of the con-

tributory income earning power of the particular member or faculty injured." *Hartford Hosiery Mills* v. *Jernigan,* 149 Tenn., 241, 259 S. W., 546, 547; *American Zinc Co.* v. *Lusk,* 148 Tenn., 220, 255 S. W., 39; *Ezell* v. *Tipton, supra.*

We are unable to say that this record fails to show some evidence in support of the finding of the trial judge that petitioner's injury extended to the leg above the ankle and practically destroyed his use of his leg, the finding of the court being, "petitioner had the lower part of his leg above his foot, in his ankle, and had the lower part of the bones in the lower leg broken. I think the proper rule in this case would be the leg itself, and not the foot, because it is above the foot, and the leg apparently is affected and has been."

 It appears that the company had advanced and paid to petitioner before the bringing of this suit $512.21, a sum in excess of the amount at that time due under the terms of the award as made, and it is said that for this reason the petition should have been dismissed. The payments were made in the nature of advances, partly in cash, mainly in commissary goods, and it is apparent that no settlement had been arrived at. The pleadings and proof show that a substantial dispute existed as to the nature of the injury and extent of the compensation, and a submission of the claim to the trial judge by petition was proper. Without this no settlement would have been binding. Section 27 of the act (Public Acts 1919, chapter 123), provides that "all settlements, before the same are binding on either party, shall be approved by the judge of the Circuit Court," etc.

We find no error and the judgment for the balance of $166.09 is affirmed.