Sun Coal Co. *v.* Epperson.

(*Knoxville*, September Term, 1941.)

Opinion filed November 29, 1941.

Cassell, Ladd & Carson, of Harriman, for plaintiff in error.

HARRY B. BROWN, and JOHN GRADY O'HARA, both of Jellico, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The company appeals from a judgment awarding compensation for an injury to the thumb. The employment of petitioner was conceded, also that he received the injury in the course of his employment. It is also conceded that he was entitled to compensation for several weeks of time lost as the result of this injury. It is further agreed that this amounted to the sum of $50.70, being 50 per cent of his wages for this period, and the company tendered this sum.

However, the company complains of the finding by the trial court that petitioner had suffered a 15 per cent permanent disability on account of this thumb injury and was entitled to recover on this basis for the remainder of the period of sixty weeks fixed by Section 6878, paragraph (c) of the Code for the loss of a thumb; the judgment thus arrived at, including the $50.70 tendered for the weeks of total disability, being $147.84. The insistence is that there is no material evidence to support this additional allowance, that neither the thumb, nor any substantial portion of it was severed, that the injury was to the flesh tip only and does not affect at all the wage-earning capacity of petitioner, who resumed, after his lay off, and continues to discharge his former duties at the same wages.

We find no dispute on the record as to the material and controlling facts. Petitioner stated that the flesh end of his thumb was split open and a portion of the flesh cut off, that since it had healed "almost a quarter of an

inch'' was gone. He stated that his work was running a motor, that he was performing the same work as before and had been receiving the same wages. On original examination he had said he could not pick up anything as well as before with that hand. However, on cross-examination he is asked more specifically about this. We quote:

"Q. Mr. Apperson, since you have returned to work your wages are exactly the same as they were before you were off? A. Yes sir.

"Q. You are performing the same service, on the same job, and drawing the same pay as you did before the injury? A. Yes, sir.

"Q. You state in the operation of the motor that there is a coupling pin? A. Yes, sir.

"Q. Did you pick that up before your injury? A. Yes, sir.

"Q. Since you have returned to work on July 24th, 1940, you have performed the same service? A. Yes, sir.

"Q. You still pick up the pin? A. Not with that hand for two months after I returned, used this one (Indicating).

"Q. At the present time you use either hand? A. Yes, sir.

"Q. At the time of the injury, and when you went to the doctor—you said the nail was all off? A. Yes, sir.

"Q. I believe there is a nail on the left thumb at the present time? A. Hardly as large.

"Q. Hardly, but almost as large as this finger? (Indicating) . . .

"Q. So far as you know, you have no injury to the joint? A. Not as I know of.

"Q. You are now working your joint? A. Yes, sir.

"Q. That is as good as it was before? A. Can't tell any difference in the working of the joint.

"Q. You were examined by the doctor, and there was no injury to the bone? A. He said he didn't think there was."

It seems that when he spoke of inability to "pick up" things, the witness was referring to the condition before the wound healed and not to a permanent or even present disability.

A doctor, the only other witness, also described the injury as to the fleshy portion of the thumb tip, a small portion severed, leaving a scar. He said there was no injury to the bone. We quote the concluding portion of this doctor's examination, in the course of which he was questioned by the court:

"Q. Would you say he had a good recovery? A. Yes, very good recovery, some loss here in front, where its cut off.

"Q. Of the flesh of the thumb? A. Yes sir.

"Court: Has he got any disability?

"Witness: Yes sir.

"Court: What per cent of disability would you say he has to this thumb?

"Witness: Don't know, but where you have this cut off you have some disability. (Indicating).

"Court: You would not be able to specify the per cent of disability?

"Witness: No sir, I would not know how.

"By Mr. Ladd.

"Q. Assuming the man now does the same work and draws the same wages, would you say he has any disability?

"Mr. Brown: Object to that.

"Court: Sustain the objection.

"Mr. Ladd: We want that in the record if you please. We except to the ruling of the Court.

"By Mr. Ladd.

"Q. Assuming the man now has the same job, and draws the same wages, would you say he has any disability? A. Got this disability—this part of the finger is cut off. (Indicating) This part of the finger right through here, this fleshy part of the finger.

"By Judge Cassell: Of the thumb?

"Witness: Yes, sir."

Counsel for petitioner comment and quote from the statute as follows:

"The Court compensated the petitioner according to the schedule and limitations prescribed in Section 6878 of the Code, subsection (c). This section of the code specifically fixes compensation for the loss of a thumb at 60 weeks, and for permanent partial disability the statute provides:

" 'In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss.' "

By analogy to the rule applicable where there has been the loss of a thumb, or other member, or of limbs or eyes, counsel say, and the trial court held, that the question of whether, or to what extent there has been a loss in fact of earning capacity is foreclosed by the terms of the statute, which fixes definitely the compensation in any one of such cases; that when, as here, there has been a loss of any portion of a member, here the thumb, compen-

sation is to be allowed in proportion to the dismemberment or loss, without regard to resultant impairment of use, or earning value; that the rule applicable to the whole, applies proportionately to any part.

▮ This argument seems to us to fail on principle. The Legislature saw fit to fix definitely and remove from the realm of debate this issue of the measure of resultant loss of earning capacity in the specific cases enumerated, in all of which cases it is certain that some degree of permanent impairment of usefulness will ensue. But the paragraph of the statute above quoted and relied on by counsel is dealing with ''disability due to injury to a member resulting in less than total loss of use of such member'' and in fixing compensation for such loss on the facts of each arising case while the prescribed rate during the time specified in the schedule is to be followed, the extent of the injury must be looked to in determining what loss of use has resulted. And, in fixing compensation for this loss of use, there comes into play a principle which underlies the Compensation Law. Code, section 6851 et seq. In the early days of this legislation this court said:

''The principle underlying this legislation is substitution of compensatory income for loss of earning capacity, proportioned to the loss of the contributory income earning power of the particular member or faculty injured. If the hand is so injured that it can no longer contribute to the employee's income earning capacity, then, whether servered or not, however injured there is total disability as to the hand. And so of other members and faculties.'' *Hartford Hosiery Mills* v. *Jenigan,* 149 Tenn., 241, 243, 259 S. W., 546, 547, 32 A. L. R., 563.

And see the recent case of *Key* v. *Briar Hill Collieries,* 167 Tenn., 229, 68 S. W. (2d), 115, to the same effect.

Indeed, in the next sentence following the language quoted as above by counsel from the act it is provided that, "If an injured employee refuses employment suitable to his capacity, . . . he shall not be entitled to any compensation," etc., thus plainly implying application of the principle that it is loss of use resulting in loss of earning capacity that the statute is intended to provide compensation for.

Now there is a loss here of some part of this member, although small, and a loss of the use of this small part has resulted from the injury, but we think it clear that this loss of use involves no "loss of the contributory income earning power of the particular member or faculty injured" and for such a loss of use no compensation is provided by the act. At most we find here only a minor mutilation and such an injury the law does not cover. *Hartford Accident & Idemnity Co.* v. *Hay*, 159 Tenn., 202, 17 S. W. (2d), 904.

The judgment will be modified so as to limit the recovery to the amount of the tender. The costs will be adjudged against petitioner.