STANDARD SURETY & CASUALTY CO. OF NEW YORK *et al. v.*
SLOAN.

(*Knoxville*, September Term, 1942.)

Opinion filed July 3, 1943.

Rehearing denied August 2, 1943.

222

ALFRED B. HUDDLESTON and EWING SMITH, both of Murfreesboro, for plaintiffs in error.

JACKSON & WASHINGTON, of Murfreesboro, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

A number of defenses are presented to the claim for compensation in this case, in which an award for permanent partial disability was made below. It is conceded that Sloan was an employee of Super Service Motor Freight Company and was injured in the course of his employment as the result of a collision in Fairfax, Virginia, between the truck he was driving for the appellant Company and an automobile.

However, it is said for appellants, *inter alias*, (1) that the employer Company was engaged in interstate commerce; that the petitioner was driving its truck interstate from Nashville to New York when injured, and that the Compensation Act does not therefore apply, but this issue was foreclosed by the admissions in the answer and the finding of the trial judge unchallenged on the motion for a new trial; (2) that no written notice of his injury was given as provided by statute, and that there is no material evidence to support the finding by the trial judge of waiver of this notice; and (3) that no award should have been made since the proof showed that petitioner had suffered no loss of wages or earning power or capacity as the result of his injury, that he was earning

and had been earning, as much wages or even more than before. The assignment on this ground must be sustained.

The trial judge found that the injury sustained is to the spine or vertebra, resulting in a permanent partial disability to the extent of 25 percent, but that, despite this general disability, his wage earning capacity had not been diminished; that whereas he was earning before and at the time of his injury an average of $34 per week, he is able to earn and was earning, when his petition was filed, in excess of this sum.

 ''The general purpose of the Compensation Acts is to provide compensation for loss of earning power or capacity sustained by workmen through injuries in industry.'' Schneider Vol. I, at p. 5. As said in Devine's Case, 236 Mass., 588, at page 592, 129 N. E., 414, at page 415, ''The general purpose of the Workmen's Compensation Act was to substitute in cases to which it is applicable, for common law or statutory rights of action and grounds of liability, a system of money payments *based upon the loss of wages* by way of relief,'' etc. (Italics ours.) And see 71 Corpus Juris, p. 232, where it is said that, ''the Compensation Acts are based on a new theory of compensation, as distinguished from previously existing theories of damages,'' etc., citing numerous cases. One may be physically injured and suffer damages, for which he could recover in an action of tort, but unless the injury to his person affects and diminishes his earning power, he can not recover an award under Compensation Acts.

Subsection (c) of Code Section 6878, as amended by Pub. Acts 1941, chap. 90, sec. 5, deals with permanent partial disability and carries a schedule fixing the

compensation to be paid for the loss of the various members of the body. The concluding paragraph of this subsection, as amended, reads:

"In all other cases of permanent partial disability not above enumerated the compensation shall be sixty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition subject to a maximum of eighteen dollars per week. Compensation shall continue during disability, not, however, beyond three hundred weeks. (Ib.; 1927, chap. 40.)"

We have here a case of permanent partial disability as to which this paragraph applies, this being a case "not above," that is, in this subsection, "enumerated." The award provided for in such a case, is "sixty per centum of the *difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition.*" The measure of the award is prescribed by the language we have italicized. If there is no "difference," then there can be no award of compensation.

In *Key* v. *Briar Hill Collieries,* 167 Tenn., 229, at page 231, 68 S. W. (2d), 115, at page 116, construing this sub-section (c), we said:

" 'The principle underlying this legislation is substitution of compensatory income for loss of earning capacity, proportioned to the loss of the contributory income earning power of the particular member or faculty injured.' *Hartford Hosiery Mills* v. *Jernigan,* 149 Tenn., 241, 259 S. W., 546, 547; *American Zinc Co.* v. *Lusk,* 148 Tenn., 220, 255 S. W., 39; *Ezell* v. *Tipton, supra* [150 Tenn., 300, 264 S. W., 355.]"

In *Sun Coal Co.* v. *Epperson,* 178 Tenn., 114, 156 S. W. (2d), 400, we recently considered a case in which a member, the thumb, had been injured, and permanently, and an award had been made by the trial court for this partial permanent disability in the amount fixed by subsection (c) for permanent partial disability of the thumb, without regard to resultant impairment of use, or earning value. Finding that no decrease in earning power had resulted, despite the conceded permanent injury to a portion of the thumb, this Court held there could be no award of compensation for loss of wages, and reversed.

The application of this principle would seem to preclude any award in the instant case. However, the trial judge found and the record shows that the injury suffered by petitioner impaired and perhaps destroyed his capacity to perform the particular work of heavy truck driving in which he had been engaged; that he had since been performing another kind of work, at somewhat higher wages, and it is argued that because he is prevented by his injury from earning the same wages as before in the same particular employment, compensation should be awarded for such impairment of capacity. The measure of compensation is not so based by the language above quoted from the pertinent statute. Identity of the work which the petitioner is able to perform with that he formerly performed is not essential. The test is whether or not there has been a decrease in petitioner's capacity to earn wages in any line of work available to the petitioner and which he is reasonably qualified to perform. This principle is recognized in the opinion in *Sanders* v. *Blue Ridge Glass Corp.,* 161 Tenn., 535, 33 S. W. (2d), 84. It was found that while

Sanders' injury prevented his performing the particular work he had been engaged in since he could earn wages at different and lighter work, the extent of this wage earning capacity must be ascertained and taken into account in fixing the award. The case was remanded for further proof on this point. This view is supported by the provision in this Code Section, 6878, subsection (c), that, "If an injured employee refuses employment suitable to his capacity, offered to or procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal," etc.

It is argued that although petitioner is able to do the lighter work in which he is now engaged and earn wages greater than formerly, "his present employment is probably temporary," as found by the trial judge, and that, therefore, the award based on decrease in his capacity to perform the particular work he was doing when injured should be affirmed. Petitioner testified on the 6th of March, 1943, that he had been working regularly since October 11th, 1942 for Air Utilities, Inc., at an airport, repairing aeroplane wings, etc. We quote from the record: "In answer to a question from the Court as to whether his present job is temporary, petitioner says: 'I don't know how long that job will last; that is a war project.'" This is the only evidence on this point. Conceding that this statement indicates that this particular job is temporary, there is nothing to show that the petitioner will not be able to find other employment, with the same or other employers, in which he can continue to earn wages. Quite evidently he is a skilled workman in a line of work likely to be in demand, even when the war is over. The statute makes no exception based on an opinion, supported by an expression by the petitioner

of uncertainty only, that his present employment is "probably temporary." To so hold would open wide the door of speculation in every case where the measure of comparative wage earnings is involved. The Court would be required to look into the uncertain future. A saying attributed by Mr. Biglow in his Bills, Notes and Checks, 2nd Ed., p. 7, to Lord Bowen is in point here: "Law should follow business; it should not . . . anticipate the course of business, except for most urgent reasons."

In the instant case the employment of petitioner, as has been shown, is in the aeroplane industry, as a skilled mechanic, and the Court judicially knows that the belief is widely entertained and the prediction generally made that this relatively modern mode of transportation, of both passengers and freight, has limitless possibilities for development and growth. It can not be said that skilled work in this great industry promises to be in temporary demand only.

The petitioner was injured on the 23rd of December, 1941. The trial judge found that his average weekly wages, "for the 52 weeks immediately prior to December 23rd, 1941, was thirty-four dollars, and his average weekly earnings thereafter, until October 15th, 1942, while working for Super Service Motor Freight Company, were slightly more than for the year 1941 . . . and that his average earnings after October 15th, 1942, in other and more suitable and much lighter work, were somewhat more than his average earnings for the year 1941." Applying the measure fixed by the pertinent statute above quoted, to wit, "the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled con-

dition," it is obvious that there is no basis for an award in any amount, since there is not only no decrease in his earnings since his injury, but an increase.

 The award of $82.50 for medical expense and treatment is challenged on the ground that written notice was not given, but since the trial judge held that this notice was waived and we find support for this holding, we think this waiver, being a substitute for the written notice, justifies this allowance for medical expense and treatment. The judgment below is affirmed as to this allowance, and otherwise reversed.

## On Petition to Rehear.

A petition to rehear complains of failure of this Court to sustain assignments challenging liability decreed for medical services, on the ground that the parties were engaged in interstate commerce, in which case, by Code Section 6856, the Compensation Law does not apply.

We did not discuss this assignment in our original opinion, this issue not having been raised in the trial court. On the contrary, the petition charged and the answer admitted that the parties were operating under the Compensation Act, and the trial judge expressly so found. The motion for a new trial was not directed to this issue, and did not challenge this finding. The attention of the trial court was not called thereto. Grounds 1, 13 and 15 of the motion for a new trial are too general to be effective for this purpose.

 Paragraphs (4) and (5) of Rule 14 of this Court expressly preclude consideration on appeal of alleged errors not specifically and "seasonably called to the attention of the trial judge and ruled on adversely to the plaintiff in error." This rule applies likewise to "matter in arrest of judgment." And this Court has re-

peatedly held to this effect, in harmony with this rule, without particular reference thereto.

■ What has been said would seem to be conclusive, but petitioner says that, on the ground now raised, the Court was without jurisdiction, and invokes the rule that this Court will, in such a case, take cognizance of this question of jurisdiction, although raised for the first time in this Court. But the Circuit Court had jurisdiction of this cause. It is not only a court of general jurisdiction, but it has jurisdiction of suits brought to recover under the Compensation Act by the terms of the Act itself. Code, Section 6885.

■■ Jurisdiction is tersely defined by Bouvier as, "the power to hear and determine a cause." Or "the right to adjudicate concerning the subject-matter in the given case." I Bouv. Law Dict., Rawles Third Revision, p. 1760. These three essentials are laid down by high authority: First, the Court must have cognizance of the class of cases to which the one to be adjudicated belongs; the proper parties must be present; and third, the point decided upon must be, in substance and effect, within the issue. 1 Black on Judgments, paragraph 242. All of these essentials appear here.

■■ Code, Section 6856 excludes from operation of the Compensation law, by subsections (a), (b), (c), (d) and (e), common carriers, while engaged in interstate commerce; persons whose employment is casual at the time of the injury; domestic, farm and agricultural employments; and, subject to prescribed exceptions, cases where less than five are employed, and State, County and municipal employments. When suit is brought for compensation either of these situations may be relied on in defense, and, if the facts so relied on in

defense are proved, liability cannot be adjudged. In any such case the question is one of fact. If such an issue is made by the pleadings, the fact is open to proof. The finding of the trial court thereon, if supported by competent material evidence, will be affirmed on appeal. But when, as here, the petition charges that, at the time of the injury, the defendant company "was operating under the Workmen's Compensation Law, and carried compensation insurance on petitioner and other employees with" a named defendant insurance company, and the defendant employer and the defendant insurer jointly answer and expressly "admit" these charges, and plead specifically as their defenses want of notice, no injury, and no permanent or other disabling injury, etc., thereby putting in issue these matters only, the defendants are ordinarily concluded by the pleadings as to defenses under Code Section 6856. And when, furthermore, as hereinabove shown, no steps are taken in the trial court, following the introduction of testimony (which it is now alleged showed that the parties were engaged in interstate commerce at the time of the injury), to raise and present specifically this issue to the trial judge, this Court will not take cognizance thereof.

The petition to rehear is dismissed.