CRANE ENAMEL CO. *v.* JAMISON.

(*Knoxville,* September Term, 1948)

Opinion filed December 11, 1948.

Rehearing denied March 11, 1949.

CHARLES A. NOONE, of Chattanooga, for plaintiff in error.

WILLIAMS & WILLIAMS and DIXON & DIXON, all of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a compensation case in which the claimant sued to recover for total permanent disability. We will refer to the parties as they appeared in the trial court, Mrs. Jam-

ison as the petitioner and the Crane Company as the defendant.

The disability which is the basis of this suit is conceded to be compensable. The sole question before us is as to the extent of the claimant's disability.

The petitioner filed her petition in the circuit court in which she alleged that while on her way to work at the Crane Enamel Company's plant, and when inside the grounds of the defendant, she fell and injured her spine; that the fall was due to stepping into a rut or hole in or near a walkway and which caused her to lose her balance and fall upon a hard concrete pavement; that as a result of the fall and injury to her coccyx bone there was a shortening of her right leg to the extent of two inches, also the tendons and ligaments of her back and limbs became contracted "thereby making her walk with a limp" etc. The petition concludes by alleging "that from and after the date of said injury she became totally disabled and she has continued totally disabled and that this disability is permanent." An answer was filed in which defendant denied that "she was or is totally disabled on account of such fall and particularly that she will hereafter be under any disability on account thereof." The petition was amended from time to time by permission of the court. But these several amendments, while material, do not go to the real merits of the present controversy. They are therefore pretermitted in this opinion.

The case was tried twice. Upon the first trial the court found as a fact that Mrs. Jamison had suffered total permanent disability and awarded compensation accordingly. A new trial was granted upon the ground of newly discovered evidence to the effct that the petitioner, since her alleged injury, had been gainfully employed for eight or nine months and had also made application for

unemployment compensation and was paid such compensation. The case accordingly was restored to the trial docket. Upon the second trial it was urged by the defendant in a special plea that inasmuch as petitioner had made repeated sworn applications for unemployment compensation, which had been approved and allowed, she was estopped from claiming compensation for any alleged disability.

The evidence bearing upon the extent of petitioner's disability, including medical experts and an osteopath, was voluminous. The petitioner was cross examined at great length as to her ability to work since the accident and especially as to her refusal to accept some lighter work offered by defendant, also as to having worked for wages since the accident. It was shown on the second trial that Mrs. Jamison had been employed at the Starlight Tourist Court for several months and had been paid from $15.00 to $20.00 per week. This was in contradiction of her contention that she was physically unable to do any work. While admitting that she was thus paid she insisted that the work was so light that it ought not to be characterized as labor and that she was still unable to work. She claimed that Mr. Bean who owned the tourist court had loaned her some money and gave her this position whereby she could repay the loan and in a way maintain herself and child. In addition to the wages paid she was given meals at the camp.

The trial judge sustained the petition and awarded compensation on the basis of "fifty percent partial disability." The trial judge in a memo opinion finding the facts said:

"Upon consideration of all the evidence brought out at the last hearing, I am still satisfied that petitioner suffered some permanent disability as charged in the peti-

tion. But in view of the testimony establishing that since the injury she has engaged in light work for wages over a considerable period of time and also submitted to an operation which may have impaired her general health to some extent I believe that fifty per cent permanent partial disability would be fair to both parties. Hence that amount of recovery is fixed by the Court.''

Medical expenses were disallowed. The amount of compensation awarded was fixed on a basis of a lapse of 132 weeks up to the date of the trial and for 148 weeks due in the future, making a total of 300 weeks at one half the compensation allowed for total permanent disability, or at $9.00 per week instead of $18.00 per week, which was the amount awarded upon the first trial.

The defendant filed a motion for a new trial upon several grounds, which the court overruled and allowed an appeal to this Court. The assignments of error are:

(1) ''There was no evidence to support the decree because; (a) There was no evidence that the petitioner was fifty percent disabled, her testimony showing that she is totally disabled, and the great preponderance of the proof showing that she is not disabled at all, no witness testifying to any fifty percent disability'' (b) ''The burden is on the petitioner to show what she is able to earn in her fifty percent disabled condition and there was no such proof.''

(2) The judgment or decree is contrary to law and to the evidence in this case. The reasons advanced in support of this assignment are argumentative of the insistence that there is no basis upon which to calculate the amount of compensation.

The third assignment will be discussed at the conclusion of this opinion.

(4) The court erred in not finding and holding that the petitioner was estopped in claiming any compensation in this case, ·because; (a) "She testified falsely on the first trial on account of which the new trial was granted; (b) to obtain unemployment compensation she executed and filed some fifteen affidavits that she was able and willing to work; and (c) that she willfully concealed from the court the fact that she had worked at the Starlight Tourist Court after the accident."

(5) The court erred in not following the report of the doctor appointed by the court to make a physical examination of the petitioner, etc.

(6) The decree is erroneous and contrary to Code Section 6878 which reads as follows:

"In all other cases of permanent partial disability not above enumerated the compensation shall be fifty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition subject to a maximum of sixteen dollars per week. Compensation shall continue during disability, not, however, beyond three hundred weeks. (Ib.; 1927, ch. 40.)" Amended to fix a maximum of eighteen dollars per week.

The first, second, and fourth assignments require a discussion of some of the material facts. It is insisted by the defendant that petitioner is not disabled at all as a result of the accident and that the case should be dismissed, or at least reversed, because "there is no evidence of any fifty percent disability."

We think there is material evidence to show a compensable injury. It is not disputed that she fell upon the concrete walkway and injured herself. She received first aid and was later taken to the hospital. According to Dr. Newall, whose qualifications defendant admitted,

she suffered an injury to the "plexus of nerves which go into the spinal column" near the coccyx bone and "the injury is permanent." While there is material evidence showing a shortening of the right leg and she walks with a limp neither can be attributed to the injury; nor can the small tumor, which was removed from the uterus by a surgical operation, be said to result from the accident. The petitioner has a slight curvature of the spine which is shown to be congenital. She has been compelled to use a brace since her injury and continually complains of severe pain in the lower back. At times she "falls out" and for the time is apparently helpless and requires assistance.

Upon the first trial the court found as a fact that she was totally and permanently injured; that she was unable to work. Upon the second trial it was shown without dispute that she had worked since the accident for several months at the Starlight Tourist Court.

Counsel for the defendant concedes on his brief, and in oral argument, that if there is some evidence showing a compensable injury that it is not an open question on appeal. But he argues with much force that the trial judge entered a "compromise decree" and that there is no evidence showing any fifty percent disability. It is true that no witness has testified to any percentage of disability. Most, if not all of the petitioner's evidence, is in support of her contention that she is totally and permanently disabled. We cannot say that the fifty percent total partial disability as decreed upon this last trial is not supported by material evidence. Its validity is not dependant upon proof by some expert medical man, or lay witness, as to an exact percentage of disability. Certainly an injured employee should not be denied compensation merely because he is unable to find

a witness who can testify to the exact percentage of his disability. That is a question solely for the trial court to determine from all the evidence in the case, including expert and non-expert witnesses.

There is no merit in defendant's contention that the trial judge erred in not following the facts as reported by the doctor who was appointed by him to examine the petitioner. It was the duty of the court of course to consider this report, and the testimony of the doctor, along with other testimony. The court however, was not bound to accept his finding of fact, or his opinion based thereon, and ignore the testimony of every other witness. Moreover it is settled law that the expert opinions of medical men are to be received with caution. We find that the medical witnesses in the instant case were far from agreement as to the extent of petitioner's disability.

We are urged to sustain the defendant's assignment of error and dismiss this case because there is no proof as to the amount petitioner is capable of earning in her disabled condition. Counsel cites as authority Code Section 6878, *supra, Russell* v. *Big Mountain Collieries,* 156 Tenn. 193, 299 S. W. 798, and *Sanders* v. *Blue Ridge Glass Corp.,* 161 Tenn. 535, 544, 33 S. W. (2d) 84. While disposition of the instant case must be and is controlled by the Code Section, and former decisions cited, we would not be justified in dismissing the case upon these authorities. The case of *Russell* v. *Big Mountain, etc., supra,* was not dismissed but "remanded for another trial." In *Sanders* v. *Blue Ridge, etc., supra,* the trial judge had failed to apply the rule for fixing the amount of compensation as provided in the foregoing Code Section. But the Court affirmed the decree adjudging "permanent partial disability" and reversed and "remanded for further evidence as to the wage-earning value of

petitioner's partial ability to work.'' The case of *Standard Surety & Casualty Co.* v. *Sloan*, 180 Tenn. 220, 225, 173 S. W. (2d) 436, 439, 149 A. L. R. 407, discusses the principle announced in the above case but an award was disallowed because there was ''no decrease in his earnings since his injury, but an increase.'' Under the cases cited we hold that the decree in the instant case is erroneous because there is no evidence of the earning capacity of Mrs. Jamison in her partially disabled condition. Upon remand, which is ordered, the trial judge will hear proof only upon that issue and fix the amount of compensation as provided in Code Section 6878, and make deductions from the total award on account of wages actually earned since the accident. Of course under the Code Section he must find the amount of her average weekly wage received prior to her injury. *Sun Coal Co.* v. *Epperson*, 178 Tenn. 114, 156 S. W. (2d) 400, and *Standard Surety & Casualty Co.* v. *Sloan, supra,* hold that compensation is awarded upon the basis of earning capacity, not to exceed $18.00 per week.

 We are unwilling to apply the doctrine of estoppel in the instant case as contended for by the defendant. We know of no case where it has been applied in compensation cases because of material conflicts in an employee's testimony. We concede that the argument of counsel for defendant is not without merit. Following the accident she was employed for several months at the Starlight Tourist Court and was also awarded unemployment compensation on her representation that ''she was available for work and able to work.'' If this case was before us on broad appeal and we were thus trying the issues *de novo* as an equity case, we would be disposed to give consideration to the question of estoppel. But disputed questions of fact in compensation cases cannot be

made the basis of assignment of error on appeal. The question of whether or not Mrs. Jamison willfully deceived the trial court as to her ability to work after the accident was a controverted issue. When the entire evidence is considered we think it is reasonable to conclude that on the first trial, and possibly the last, Mrs. Jamison was exaggerating the extent of her injuries, although Dr. Newall fully supported her contention that she was not able to work. But it was not a willful deception. Following her dismissal by the Crane Company she was in dire distress and took the job at the tourist court. She explained it by saying she had to live someway and the work required no physical exertion. While she reported to the Department of Unemployment Compensation that she was ''able to work'' (This appears in the printed form of her application.), it was not conclusive as to the amount or quality of work she could do. We find undisputed evidence to the effect that the petitioner while at the tourist court was ill. When she first went to work she was paid nothing except possibly her meals and later $8.00 or $10.00 a week. ''She didn't work all the time.'' The owner of the court, Mr. Bean, gave this additional testimony:

''Q. What was her condition, the condition of her health when she was there? A. She was always complaining and laying off from work and falling out in the kitchen.''

The witness had seen her fall down a number of times. Evidently this was from exhaustion or because of her injury. He testified also ''she walked with a limp.''

''Q. What was her condition when you took her home? A. She was sick when I'd take her home.''

■ Mrs. Jamison testifying as to what she did at the court said, ''I watched the colored help, occasionally I

went out front. But they didn't want me out there because of my clothes didn't look so nice with this brace on. I got a lot of slurs about it from the other girls''. She further stated that ''she was permitted to lie down and rest, and when I did get a fall, why they would pick me up and take me home''. While we have not considered the issue *de novo* as to her ability to work, we think the weight of the evidence shows that the petitioner was not able to perform much physical labor. What she did seemed to be on her nerve pure and simple. It was a case of trying to do something to save herself from actual want. When all the facts are considered we cannot say that what she did at this tourist court, although she was paid for it, was wholly inconsistent with her testimony that she was physically unable to work. The holding in *De Grafenreid* v. *Nashville Railway & Light Co.,* 162 Tenn. 558, 560 and *Nashville & American Trust Co.* v. *Aetna Casualty & Surety Co.,* 21 Tenn. App. 366, 110 S. W. (2d) 1041, should not be applied to the facts in the present case because it cannot be determined that the petitioner intended to willfully practice a fraud upon the trial court.

█ The defendant finally contends that the decree is invalid, and of no effect, because ''it was rendered at a term subsequent to that in which the last evidence was heard some twenty-three days prior to the adjournment of the term''. It is conceded that the final decree was entered on January 16, 1948, following the adjournment of the term on December 31, 1947.

In support of this assignment defendant relies upon *Kyle* v. *Goulette,* 9 Tenn. App. 203, *Mitchell* v. *Porter,* 26 Tenn. App. 498, 173 S. W. (2d) 443, 452, *Standard Oil Co.* v. *Naramore,* Tenn. App., 207 S. W. (2d) 7, and Code Sections 10311 and 10312. The assignment is

without merit. Chapter 48 of the Private Acts of 1947, amending Section 10312 of the official Code of 1932, conferred upon the trial judge full authority to enter the final decree at the January term 1948, and it was not necessary to its validity that the former term be extended into the succeeding term by any order of court. The cases cited by counsel became a dead letter upon the passage of this statute. The assignment is accordingly overruled.

The case is reversed and remanded for hearing of further evidence upon the single issue heretofore pointed out in this opinion. The costs of the appeal are taxed against the plaintiff in error.

All concur.

## ON PETITION TO REHEAR.

In response to the petition to rehear we are pleased to say that our regard for counsel for the petitioner is such that no apology was at all necessary for his action in again challenging our attention to the question raised in the original assignment of error. While it is true that we had quite a heavy docket at Knoxville to dispose of (approximately 130 cases) yet we gave to each and every case, including petitioner's, the most careful consideration.

It is conceded that the case before us was heard on oral evidence and that the trial judge filed a memorandum opinion on December 19, 1947, which was during the term the case was tried, but judgment was not entered until the succeeding term on January 16, 1948. Petitioner contends that the judgment is void. It is insisted that Code Section 10347 was not complied with and that since the hearing was concluded more than four

days before the end of the term, and the term not being extended by order of court, there was no authority for entering the judgment at the succeeding term of court. Contention is further made that Code Section 10312, and the amendment of 1947, Chapter 48 of the Acts of 1947, applies to cases on trial which cannot be concluded by the end of the term, and since the instant case was concluded more than four days before the end of the term Section 10312 and the amendment thereto had no application.

We think that Code Section 10347, Chapter 441 of the Public Acts of 1903, upon which petitioner relies, and Code Section 10312 as amended by the Acts of 1947, should be considered *in pari materia* because they undertake to control the effect of the ending of the term on litigation pending in the Circuit Court.

Code Section 10347 reads as follows:

"When any judge of any circuit tries a case without the intervention of a jury, whether he is required to reduce his findings of facts to writing or not, he shall be required to render his decision and have judgment entered in the case at the term of court at which the case is tried; provided, all the testimony or evidence in the case is heard as much as four days previous to the termination of said term of court."

Section 10312 is as follows:

"When any case, on trial by court or jury, is undetermined at the time the term at which it is pending expires, on account of time, and on account of the arrival of the succeeding term, the term shall be extended and continued into such succeeding term for all the purposes of trying, disposing of, and returning verdict and rendering judgment in such case, the same as if such new term had

not arrived. And the jury trying such case shall not be discharged because of the expiration of the term.''

The amendment to Section 10312 is as follows:

''That the trial court shall have full authority to hear motions for a new trial, grant appeals, and extend the time for the filing of bills of exception, or wayside bills of exception, for and during a period of thirty days from the entry of the original judgment or jury verdict, regardless of the extension of the trial term by operation of law, or by order of court, or whether the court was adjourned from day to day or to court in course, and regardless of the time the original judgment or jury verdict wsa entered—whether at the trial term or thereafter —it being the object and purpose of this amendatory Act to render effective all acts of the trial judge relating to any case disposed of by him as fully and completely as if said acts had been performed during the trial term.''

We find no merit in the contention of the petioner that his case was not pending at the end of the September term of court 1947, but had been concluded more than ten days before the beginning of the succeeding term, and for this reason it was necessary to extend the term by formal order.

The petitioner argues that Section 10347 made it mandatory upon the trial judge to decide the case and enter judgment at the September term of court and not having done so the court lost jurisdiction of the case. But able counsel for the petitioner overlooks the fact that the Legislature has no authority to peremptorily command the court to decide a case during the term at which it is being tried. No case is cited, and we think none can be found, where any Legislature has ever undertaken to thus usurp the inherent power of any judicial tribunal.

 The only effect of Section 10347 is that where a case was not decided and judgment entered, if the trial was concluded as much as four days before the end of the term, that it was necessary to enter an order extending the term. But the enactment of the foregoing amendatory Act repeals by implication Section 10347 as effectually as if special reference had been made to it, in that it is no longer necessary to enter an order extending the term to take care of any case, *or any question relating to it*, where such case had not been concluded at the end of the term, or where it was concluded but no judgment entered.

We welcomed this amendment to Section 10312, and we feel that it was also gratifying to the Bar, in that it removed entirely from the realm of controversy all technical questions as to when a trial court retained or lost jurisdiction of a case by reason of the end of the term. Our brethren of the Court of Appeals, Judge ANDERSON in *Mitchell* v. *Porter,* 26 Tenn. App. 498, 173 S. W. (2d) 443, and Judge HICKERSON in *Standard Oil Co.* v. *Naramore,* 30 Tenn. App., 430, 207 S. W. (2d) 7, labored long and ably with the problem, not to mention cases in which this Court has often toiled. But it is correct to say, as we did in the original opinion, that these decisions are now "a dead letter", thanks to the Lord and the Legislature of 1947.

The petition to rehear is denied.

All concur.