IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, November 8, 2010

**STATE OF TENNESSEE, ex rel. ALEXANDRIA PRICE, v.
CHRISTOPHER CHILDERS**

**Appeal from the Juvenile Court for Hamilton County**
**No. 38241    Hon. Suzanne Bailey, Judge**

_____

**No. E2011-00457-COA-R3-JV-FILED-JANUARY 5, 2012**

_____

The State brought this action against the defendant to establish paternity and require support
for the dependent child.  A default judgment was taken against defendant, which determined
that he was the father of the child and he was ordered to pay child support, and it was ordered
that the child support be withheld from his paycheck.  During these proceedings the
defendant was a member of the United States military, and he subsequently filed a *pro se*
motion for DNA testing.  The DNA test established that he was not the biological father of
the child, and the support withheld from his paycheck was ordered reimbursed to defendant.
The State appealed, and we hold that the Juvenile Court did not have subject matter
jurisdiction to require the State to reimburse defendant for the child support withheld from
his paycheck.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D.
SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, and Marcie E. Greene, Assistant
Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee.

# OPINION

## Background

This appeal was filed by the Tennessee Attorney General and Reporter on behalf of Alexandria Price, pursuant to Tenn. R. Civ. P. 27(b). The State is providing child support enforcement services to Alexandria Price, pursuant to Title IV-D of the Social Security Act, 42 U.S.C. Sections 651, *et seq.* and Tenn. Code Ann. § 71-3-124©.

The State of Tennessee, *ex rel.* Alexandria Price filed a petition to establish paternity against Christopher Childers on August 8, 2008, in the Juvenile Court. The State filed a motion for default judgment against Childers on December 16, 2008. The motion was heard on March 30, 2009 at which time the Juvenile Court Referee entered an order finding Mr. Childers the biological father of Ms. Price's child by default. The order also granted the State a judgment for child support arrears against Mr. Childers and set his child support at $126.23 a week.[1] There is no transcript of that hearing, and according to a later order in the case, the Tennessee Department of Human Services, pursuant to its enforcement powers, caused the child support amount to be withheld from Childer's paycheck from the United States of America.

On June 8, 2009, Childers filed a *pro se* motion for DNA testing. The motion states: "I was deployed in Baghdad, Iraq from 11/27/07 until January 5, 2009. I never recieved [sic] a letter ordering me to report for a DNA test. Therefore I was ordered the father by default." A hearing on Childers' motion was held on October 7, 2009 and DNA testing was ordered by the Referee. Childers' child support obligation was suspended pending another hearing after the DNA testing was completed. On October 13, 2009 a DNA test report established that Childers was not the biological father of the minor child.

A hearing was held on February 2, 2010 before the Juvenile Court Magistrate who found that Mr. Childers was not the biological father of Ms. Price's child. The March 30, 2009 judgment for child support and arrearage was set aside. The magistrate ordered the State of Tennessee to "reimburse" Mr. Childers $2,735.00, the amount of child support he had paid through the State to Ms. Price. The order states that the State may seek reimbursement from Ms. Price. The Magistrate's order also states that the record reflects that at the time of the March 30, 2009 order finding Mr. Childers to be the biological father of the child and ordering child support "the State was aware that the respondent was in the

---

[1]The March 30, 2009 order indicates that service was made on respondent on September 4, 2008.

military."

The State then moved for rehearing before the Juvenile Court Judge based on the argument that "the State shall not be liable in any case to compensate any person for repayment of child support as a result of the rescission of any orders of legitimation, paternity or support" pursuant to Tenn. Code Ann. § 36-5-101(a)(7).

A hearing was held on May 4, 2010 before the Juvenile Court Judge, and on June 22, 2010, the Juvenile Judge affirmed the Magistrate's order requiring the State to reimburse Mr. Childers based on the decision that the March 30, 2009 order was void *ab initio*.

The State then filed a Notice of Appeal, and we note that the appellant did not address the fact that the Juvenile Court Judge based her decision that the State should reimburse Childers the amount of child support garnished from his wages, because of a violation of the Soldiers' and Sailors' Civil Relief Act of 1940 (now the Servicemembers' Civil Relief Act), U.S.C.A. App. § 501 *et seq.,* nor did appellant address the Act in its brief filed with this Court.

The issues presented on appeal are:

A.  Whether the Juvenile Court lacked subject matter jurisdiction to award damages based on the statutory limitations on the jurisdiction of juvenile courts?

B.  Whether sovereign immunity barred the Juvenile Court from ordering the State to reimburse Mr. Childers for the child support that was garnished?

Appellee Childers did not file a brief with this Court or otherwise make an appearance.

The following facts are pertinent to this appeal.  The record shows that Childers was served with the petition on September 4, 2008.  However, Childers testified that the Jasper, Tennessee address to which the petition was mailed was his parents' home and that service had been refused on September 4, 2008, and he was deployed in Iraq from November 27, 2007 until January 5, 2009.

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d).  The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v.*

*Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

The determinative issue on appeal is whether the Juvenile Court erred when it ordered the State to reimburse Mr. Childers for the child support that it had collected through garnishment once it was established that Mr. Childers was not the biological father of Ms. Price's child.  The Juvenile Court, in its order, found that because the State had chosen to proceed with its suit against Childers without following the procedures set forth in the Soldiers and Sailors Civil Relief Act of 1940 (now the Servicemembers Civil Relief Act), 50 App. USCA § 501 *et seq.*, the Juvenile Court Referee's order finding Childers the biological father of Ms. Price's child by default and the judgment for child support against Childers were void *ab initio.*   Based on this conclusion, the Juvenile Court ordered "there is not and have not been a valid Order of Support against Mr. Childers . . . the State improperly took money from him", and the Court ordered the State to refund the moneys it had taken from him through garnishment.

50 App. USCA § 502 sets forth the purpose of the Servicemembers Civil Relief Act as follows:

> (1) to provide for, strengthen, and expedite the national defense through protection extended by this Act [said sections] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

> (2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 App. USCA § 502.

Thus, the Act was enacted to protect "those who have been obliged to drop their own affairs to take up the burdens of the nation" from exposure to personal liability without an opportunity to appear and defend in person or through counsel. *Boone v. Lightner,* 319 U.S. 561, 575, 63 S.Ct. 1223, 1231,  87 L.Ed. 1587 (1943)).  50 App. USCA § 521 provides protection to servicemembers against default judgments.  The applicable parts of Section 521 are as follows:

> (a) Plaintiff to file affidavit.
> This section applies to any civil action or proceeding, including any child custody proceeding, in which the defendant does not make an appearance.

**(b)** Affidavit requirement

(1) In any action or proceeding covered by this section, the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit--

(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

(B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

(2) Appointment of attorney to represent defendant in military service

If in an action covered by this section it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If an attorney appointed under this section to represent a servicemember cannot locate the servicemember, actions by the attorney in the case shall not waive any defense of the servicemember or otherwise bind the servicemember.

(3) Defendant's military status not ascertained by affidavit

If based upon the affidavits filed in such an action, the court is unable to determine whether the defendant is in military service, the court, before entering judgment, may require the plaintiff to file a bond in an amount approved by the court. If the defendant is later found to be in military service, the bond shall be available to indemnify the defendant against any loss or damage the defendant may suffer by reason of any judgment for the plaintiff against the defendant, should the judgment be set aside in whole or in part. The bond shall remain in effect until expiration of the time for appeal and setting aside of a judgment under applicable Federal or State law or regulation or under any applicable ordinance of a political subdivision of a State. The court may issue such orders or enter such judgments as the court determines necessary to protect the rights of the defendant under this Act [sections 501 to 596 of this Appendix].

(4) Satisfaction of requirement for affidavit

The requirement for an affidavit under paragraph (1) may be satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury.

* * * *

(g) Vacation or setting aside of default judgments
    (1) Authority for court to vacate or set aside judgment
    If a default judgment is entered in an action covered by this section against a servicemember during the servicemember's period of military service (or within 60 days after termination of or release from such military service), the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action if it appears that--

    (A) the servicemember was materially affected by reason of that military service in making a defense to the action; and

    (B) the servicemember has a meritorious or legal defense to the action or some part of it.

The Juvenile Court correctly found that the Court, through the actions of the referee had erred when it entered a default judgment against Childers when it had knowledge that he was serving in the military. The record indicates that the Court had knowledge of Childers' military status, but even if not, Section 521 (b) requires the Court to cause the plaintiff to file an affidavit as to the military status of the defendant before a default is entered. The Court did not do this, thus no attorney was appointed to represent the defendant under section 521 (b)(2) nor was a bond filed by plaintiff under section 521 (b)(3). Subsequently, Childers filed a motion for DNA testing, which determined that he was not the father, and the Magistrate then properly under section 521(g)(1)(B) set aside the default judgment declaring him the father and setting child support.

However, the Juvenile Court, in its June 2010 Order on the State's motion, held that because the procedures set forth in the Act were not followed by the State, the Judgement of the Court was void *ab initio*, and reasoned that there had never been a valid order and the State's garnishment of child support payment from Childers was improper and the State had to refund the money.

The ruling of the Juvenile Court was in error because a judgment entered in violation of the Servicemembers Civil Relief Act is only voidable and not void and does not violate due process. *Sarfaty v. Sarfaty,* 534 F. Supp. 701, 706 (E.D. Pa. 1982); *Davidson v. General Finance Corporation,* 295 F.Supp. 878, 881 (N.D.Ga.1968); *see also In re Paternity of T.M.Y.*, 725 N.E.2d 997, 1004 (Ind. Ct. App. 2000)(default judgment of paternity against a service member in violation of the Act was merely voidable and not void). Accordingly, the

-6-

default judgment was not void when it was initially entered, as found by the Trial Court, and the order for child support was valid when the actual garnishment took place. But we do not agree with the Juvenile Court's order that the State refund the garnished funds to Childers based on the reasoning that the moneys were garnished based on a void judgment.

The State argues on appeal that the Juvenile Court lacked subject matter jurisdiction to order that the State reimburse Childers for child support payments that were garnished prior to the establishment that he was not the father of Price's child. The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *Terry v. Tennessee Dept. Of Corr.,* No. W2008-01907-COA-R3-CV, 2009 WL 1138122 at * 1(Tenn. Ct. App. Apr.28, 2009)(citing *Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Standard Sur. & Cas. Co. v. Sloan,* 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought and can only be conferred on a court by constitutional or legislative act. *Id.* at *1. A determination of whether subject matter jurisdiction exists is a question of law, thus, and we review this issue *de novo,* without a presumption of correctness. *Id.*

The Court of Appeals had occasion to examine whether a juvenile court had subject matter jurisdiction in *In re S.L.M.*, 207 S.W.3d 288, 295 -296 (Tenn.Ct.App.2006). The Court's recapitulation of the law in Tennessee on that issue is instructive and useful for the analysis here:

> In order to acquire jurisdiction over a particular controversy, a court must have jurisdiction not only over the parties but also over the subject matter of the proceeding. *State ex rel. Whitehead v. Thompson,* No. 01A01-9511-CH-00538, 1997 WL 749465, at *2 (Tenn.Ct.App.Dec.5, 1997). The concept of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms,* 98 S.W.3d 140, 143 (Tenn.2003); *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn.2000). A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts. *Meighan v. U.S. Sprint Commc'ns Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn.1977). Without subject matter jurisdiction, a court cannot enter a valid, enforceable order. *Brown v. Brown,* 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson,* 46 S.W.3d 216, 221 (Tenn.Ct.App.2000). The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn.1994); *First Am. Trust Co. v. Franklin-Murray Dev. Co.,* 59 S.W.3d 135, 140 (Tenn.2001). Thus, when a court's subject matter jurisdiction is challenged, the first order of business is to ascertain the nature or gravamen of the

case. *Midwestern Gas Transmission Co. v. Baker,* No. M2005-00802-COA-R3-CV, 2006 WL 461042, at *11 (Tenn.Ct.App.Feb.24, 2006) (No Tenn. R.App. P. 11 application filed). Then, it must be determined whether the Constitution of Tennessee or the General Assembly has conferred on the court the power to adjudicate cases of that sort. *Newsome v. White,* No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *2 (Tenn.Ct.App.Dec.22, 2003) (No Tenn. R.App. P. 11 application filed); *Levy v. Bd. of Zoning Appeals,* No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *3 (Tenn.Ct.App.Sept.27, 2001) (No Tenn. R.App. P. 11 application filed). Both determinations involve questions of law which this court reviews *de novo* without a presumption of correctness. *Northland Ins. Co. v. State,* 33 S.W.3d at 729; *Southwest Williamson County Cmty. Ass'n v. Saltsman,* 66 S.W.3d 872, 876 (Tenn.Ct.App.2001).

Juvenile courts are courts of record with special and limited jurisdiction. *Stambaugh v. Price,* 532 S.W.2d 929, 932 (Tenn.1976); *Juvenile Court of Shelby County v. State ex rel. Humphrey,* 139 Tenn. 549, 555, 201 S.W. 771, 772 (1918). One of their purposes is to provide a simple and efficient judicial mechanism to protect the rights of children in a uniform manner throughout the state. Tenn.Code Ann. § 37-1-101(a)(4), -101(b) (2005); *In re McCloud,* No. 01A01-9212-CV-00504, 1993 WL 194041, at *6 (Tenn.Ct.App. June 9, 1993) (No Tenn. R.App. P. 11 application filed). Because juvenile courts were unknown at common law, they may exercise only those powers that have been conferred on them by statute. *State ex rel. Hyatt v. Bomar,* 210 Tenn. 249, 252-53, 358 S.W.2d 295, 296 (1962); *West Tenn. Agape, Inc. v. Lipe,* 515 S.W.2d 648, 649 (Tenn.Ct.App.1974). However, within their statutory jurisdiction, juvenile courts possess the full power to act. *Cartwright v. Juvenile Court,* 172 Tenn. 626, 629, 113 S.W.2d 754, 756 (1938); *White v. State ex rel. Armstrong,* No. M1999-00713-COA-R3-CV, 2001 WL 134601, at *2 (Tenn.Ct.App.Feb.16, 2001) (No Tenn. R.App. P. 11 application filed).

*In re S.L.M.* at 295 -296.

In *White v. State ex rel. Armstrong,* M1999-00713-COA-R3CV, 2001 WL 134601 (Tenn. Ct. App. Feb. 16, 2001) this Court cautioned that care must be taken to not extend the subject matter jurisdiction of the juvenile courts beyond the jurisdiction conferred on them by the General Assembly. The Court stated that while the juvenile courts have broad statutory authority to establish a child's paternity under Tenn.Code Ann. § 37-1-103(a)(2) and to issue orders setting, modifying, or even terminating child support under Tenn.Code Ann. §§ 36-5-401, -701, -2101, 37-1-104(d), the Court did not find any statute giving the juvenile courts authority, expressly or by implication, to order the State to reimburse a person who has paid child support based on the mistaken belief that he was the child's biological father. The *White* Court concluded that in the absence of statutory authority, the juvenile courts do not

have subject matter jurisdiction over requests of this sort. *White* at * 1 - 2.

The Western Section of this Court reached a similar conclusion in *Whitney v. Lewis*, 244 S. W. 3d 824, 831 (Tenn. Ct. App. 2007). *Whitley* involved a claim in juvenile court to recover child support payments by Lewis, after he learned he was not the child's father. After a paternity test showed that Lewis was not the father, the juvenile court set aside the voluntary acknowledgment of paternity based on fraud, relieved the respondent of any future child support obligations, and forgave all past child support arrearage. Lewis then sued the mother, seeking damages because the mother had fraudulently induced him into signing the voluntary acknowledgment of paternity. The juvenile court granted his petition against the mother, awarding him damages consisting of the child support erroneously paid, etc. This Court reversed the juvenile Judge's judgment, based on the conclusion that the juvenile court erroneously forgave the respondent's accrued child support arrearage, and it did not have jurisdiction to adjudicate the respondent's petition against the mother for damages. *Whitley* at 825 - 826.

While the facts in *White* and *Whitley* differ from the facts here, there is simply no statutory authority to support the Juvenile Court's order that the State refund the moneys garnished from Mr. Childers while the child support order was still valid and in force. The order of the Juvenile Court that the State reimburse Childers the child support payments that were garnished prior to the vacation of the default judgment and order of child support is reversed, and our holding pretermits the issue of sovereign immunity raised by the State.

In conclusion, we hold the Juvenile Court did not have subject matter jurisdiction to order the State to reimburse Childers the child support that was garnished prior to the vacation of the default judgment and order of child support. This case is remanded to the Trial Court. The cost of the appeal, in our discretion, is taxed to the State of Tennessee.

_____
HERSCHEL PICKENS FRANKS, P.J.

-9-