## The NATIONAL MUT. CASUALTY CO. v. LOWERY.

### No. 1964.

Court of Civil Appeals of Texas. Eastland.

Dec. 22, 1939.

Rehearing Denied Feb. 2, 1940.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, for appellant.

Armstrong, Cranford, Barker & Bedford, of Galveston, J. D. Barker, of Sweetwater, and Herman Charles, of Portales, N. Mex., for appellee.

FUNDERBURK, Justice.

Thomas Jefferson Lowery, by way of appeal from an adverse decision of the Industrial Accident Board, brought this suit seeking to recover compensation for allegedly total and permanent disability resulting from hernia sustained by him as an employee of National Tank Company. The National Mutual Casualty Company, compensation insurance carrier for said employer, was the defendant. Plaintiff's petition (trial pleading), among other things, alleged that "he has been willing at all times and is willing now [file date of pleading, October 10, 1938] to undergo a surgical operation, but the defendant has at all times refused to have him operated on as it is their legal duty to do, and have refused to pay him any compensation * * * The plaintiff demands of the defendant an operation for said hernia at the expense of said defendant, and said defendant has refused to furnish same unto plaintiff and he is now totally and permanently disabled and is therefore entitled to compensation under the general provisions of the Workmen's Compensation Act."

In a jury trial the case being submitted on special issues, all issues were found in favor of plaintiff. Included in the issues so submitted and found, was one inquiring whether "Lowery has at all times since the date of the development of the hernia,

if any, been willing to submit to a surgical operation." Another made inquiry whether "The National Mutual Casualty Company has at all times refused to provide a surgical operation for plaintiff's said hernia, if any, resulting from the injury, if any, inquired about in special issue No. 1." Judgment having been rendered for plaintiff on the verdict awarding recovery of $4,961.59, the defendant has appealed.

■ The merit of most of appellant's assignments of error and propositions thereunder is either wholly dependent upon or materially affected by the proper construction of R.S.1925, Art. 8306, sec. 12b. The general question presented may, we think, adequately be stated thus: Where an employee of an employer subject to the Workmen's Compensation Statutes sustains an injury consisting of, or resulting in, hernia under the specified circumstances rendering such an injury compensable, and the insurance carrier fails or refuses to "provide * * * surgical treatment by * * * operation", not being excused from doing so by refusal of the employee to submit to such operation, may the employee in a timely suit to set aside an adverse decision of the Industrial Accident Board, upon his claim for compensation, recover for total and permanent disability, if any, resulting from such injury? This question, we think, must be answered in the affirmative.

Hernia differs from other general injuries in two general respects; one being absolute and the other conditional. It differs absolutely in certain required special elements to render the injury compensable. Superadded to the ordinary elements of an injury as defined in R.S.1925, Art. 8309, sec. 1, are (to use the numbering in the statute) these three: (2) appearance of the hernia "suddenly and immediately following the injury" (accident). (3) Nonexistence of hernia "in any degree prior to the injury for which compensation is claimed." (4) Pain accompanying the injury. (We have designedly omitted mention of (1) only because the existence of a hernia as an injury is manifestly not special and would have to be shown even if hernia was in no respect different from any other general injury.)

■ These elements may properly be regarded as a matter of required special proof of hernia as an injury. The language of the statute is "it must be definitely proven" etc.

■ The conditional difference between hernia and other general injuries is in the compensation to be awarded. The statute in terms purports to impose upon the insurance carrier the duty to provide an operation. The language of the statute is that "where liability for compensation exists, the association shall provide competent surgical treatment by radical operation."[1] Unless such operation is provided and the employee submits to the operation and it is a success there is no qualification or abridgment of the rights of the employee to compensation for disability resulting from hernia, the same as any other general injury.

■ The Industrial Accident Board has potential jurisdiction to determine whether an employee should have an operation for hernia. A prerequisite fact es-

---

[1] We would not be understood as deciding that the insurer is under an absolute duty to provide an operation. If the medical advisers of the insurer were of the opinion that an operation would not effect a restoration of earning capacity or shorten the period of disability resulting from hernia, it is believed that no duty would exist to "provide competent surgical treatment by radical operation." The statutes contemplate that there may be cases where because of chronic diseases or for other reasons it may be "more than ordinarily unsafe to submit to such operation." If the insurer be advised of the existence of any such condition it would seem there could exist no duty to offer to operate. If the medical advisers were of the opinion that an operation would endanger the life of the employee it would be most unreasonable to hold that nevertheless the insurer was under a duty to operate. A more reasonable construction would be, we think, that it affords the insurer an option to minimize the possible extent of its liability by an operation when it is considered that the operation will have such effect.

Under this view it may be considered that plaintiff unnecessarily tendered issues as to the refusal of the appellant to provide an operation and of appellee's willingness to submit to an operation. We cannot see, however, that the proceedings having reference to such issues can be reasonably calculated to prejudice any right of appellant, and may be regarded as surplusage.

sential, in a particular case, to the exercise of such jurisdiction is the refusal of the employee to submit to such operation. Only when the potential jurisdiction of the Board becomes active by refusal of the employee to submit to an operation is the Board empowered to make any order which can have the effect, in any event, to qualify or restrict the right of the employee to compensation for disability resulting from hernia the same as any other general injury. If the active jurisdiction of the Board be invoked by refusal of the employee to submit to a proffered operation there still is no absolute qualification upon, or restriction of, his right to compensation as for a general injury. If the Board, following the prescribed procedure, decides that the employee should not undergo an operation then the employee (in the language of the statute) "shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of this law." If the decision of the Board be in favor of an operation and the employee submits thereto but the operation is not a success there results no abridgment of the employee's right to compensation as for a general injury. If the operation results in death the rights of the beneficiary to claim as for general injury remains unaffected.

The only conditions upon which the employee may be restricted to compensation different from a general injury are (1) that the jurisdiction of the Board to determine the advisability of an operation be invoked by the fact of the refusal of the employee to submit to an operation; (2) that the Board, exercising such jurisdiction, decide against an operation, but the employee submits anyway and the operation is not a success. (In such case compensation shall consist only of the expenses of the operation and weekly compensation for one year). (3) That the Board, exercising its jurisdiction, decide in favor of an operation and the employee refuses to submit. (In that case compensation is limited to payment of average weekly wages for 26 weeks).

■ The statute does not purport to condition any right of the employee upon his making request, or demand, for an operation. No duty to request or demand an operation we think rests upon the employee and for one very good reason, among possibly others, that the employee would not be expected to know whether he was in need of an operation or not. That would be a matter naturally and primarily for the decision of the insurer's medical advisers. The statute, we think, clearly implies the intention to give the insurer the right, in the nature of an option, if the facts to be determined as prescribed so warrant, to substitute a different compensation from that provided for a general injury. In the instant case that optional right has not been exercised by appellant, nor was such right rendered nonavailable to the appellant by any action of the employee. Such a construction of the statute has been forecast in previous decisions of the courts of this state, particularly in Texas Employers' Insurance Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967; Texas Employers' Insurance Ass'n v. Henson, Tex.Civ.App., 31 S.W.2d 669, 671, reversed on another ground, Tex.Com.App., 48 S.W.2d 970; Texas Employers' Insurance Ass'n v. Howell, Tex. Civ.App., 37 S.W.2d 343; Columbia Casualty Co. v. Ray, Tex.Civ.App., 5 S.W.2d 230.

■ In order to state a cause of action entitling plaintiff to an award of compensation for total and permanent disability for an injury consisting of hernia he no doubt considered that it was necessary by affirmative averment to show that his rights had not been limited as said section 12b conditionally provides may be done. To this end appellee alleged that appellant had refused to provide for the operation and further that appellee had at all times been willing to submit to an operation. Either averment was sufficient, the purpose being merely to exclude a possible inference from the facts otherwise alleged that he had no right to recover as for general injury.

■ There was no error in admitting evidence to prove said allegations nor in submitting the facts so averred as issues. Some proffered evidence of a refusal of the insurer to provide the operation was excluded, but that all such evidence was not excluded is indicated by the fact that the trial judge submitted the issue—an action which presupposes the existence of evidence to support the issue. Evidence that the employee was willing to submit to an operation, together with evidence that no such operation had been performed, was alone, we think, some evidence of a refusal on the part of the employee to provide for the operation, particularly in the only sense material, namely, that the surgical

treatment was not provided nor provision for it excused.

█ Complaint is made of testimony of Dr. Martin H. Jansen admitted over objections to the effect that (1) hernia can result by strain or stress or heavy lifting, (2) that it could have occurred under a fact situation stated hypothetically to him, and (3) that within a day or two after the injury there would not necessarily be blood, lacerations or swelling where the hernia occurred. There is so little question in our minds of the admissibility of such testimony, given by a duly qualified expert witness, that we deem it unnecessary to discuss the matter at length. The admissibility of such testimony, we think, is fully sustained by the decisions of which we need only mention the following: Republic Underwriters v. Howard, Tex.Civ.App., 69 S.W.2d 584; El Paso Electric Co. v. Beckman, Tex.Civ.App., 89 S.W.2d 470; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581.

█ The court gave a definition of "injury or personal injury" as "Damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." This was objected to, and the admission of the testimony over such objection is here complained of on the ground that there was no evidence that any disease or infection resulted from the injury, if any, and that it was on the weight of the evidence, was confusing to the jury and permitted them to speculate on injuries of which there was no proof and there was no pleading that there were any "diseases or infection from the injury." It would seem to be a sufficient answer to say that the definition given is the definition declared in the law itself. Revised Statutes 1925, Art. 8309, sec. 1. Revised Statutes 1925, Art. 2189, requires that the court in submitting special issues shall "submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." The definition complained of was given conformably to this requirement of law. The fact that eminent counsel can seriously question the propriety of giving a statutory definition, where definition or explanation is required, is a subject of interesting speculation. Similar contentions have several times been made in cases before this court. Traders & General Ins. Co. v. Weather-

ford, Tex.Civ.App., 124 S.W.2d 423; Liberty Mutual Ins. Co. v. Boggs, Tex.Civ. App., 66 S.W.2d 787; Texas & P. Ry. Co. v. Phillips, Tex.Civ.App., 56 S.W.2d 210. The nature of the objection made furnishes a clue to the answer. The reason is to be found in a failure to appreciate a most important distinction, namely, that the definitions or explanations which said Art. 2189 requires shall be given are not special charges or instructions upon the law of the case which R.S.1925, Art. 2186, provides may be given. Special charges or instructions on the law of the case are not only not required to be given, but under the decisions are prohibited in a case submitted upon special issues. Therefore, the "explanations and definitions of legal terms" required to be given in cases submitted upon special issues and special charges or instructions on the law of the case prohibited from being given cannot, of course, be the same thing. The theory of the objection to the definition in the instant case is that there was no evidence of disease or infection as a part of the alleged injury. Manifestly the principle invoked is that the court should not give a special charge or instruction upon a phase of the case not raised by any evidence. The principle has no application whatever. The meaning of a legal term is not different in different cases. Considering that the jury is not to be concerned with the law of any case when the case is submitted to them upon special issues, they are to be given only such explanations or definitions of legal terms as are necessary to enable them to make their findings (conclusions of fact) upon the issues of fact submitted. There is simply no ground upon which to base a contention that the same definition of the same legal term used in the same sense should not be the same in all cases. As we have heretofore pointed out, it may be true that the failure to give all of a statutory definition may not, because of the nature of the evidence, be prejudicial. But it does not follow that it would not be proper to give the definition prescribed by law, or a correct definition whether prescribed by law or not.

We also overrule the contention that there was no evidence that appellee suffered hernia as alleged. It is deemed unprofitable to extend this opinion by setting forth the evidence upon which we reach the conclusion that the evidence raised an issue of fact for the decision of the jury.

# 1050

We reach the same conclusion upon the contention that the evidence did not raise issues of fact as to appellee having sustained total and permanent disability as the result of his injury. Also, that the evidence did not raise an issue of fact as to appellee's average weekly wages.

Being of the opinion that there is no error shown, and that the judgment should be affirmed, it is accordingly so ordered.

### On Motion for Rehearing

Appellant's motion for rehearing, while in no way exhibiting any lack of respect, declares that "The decision in this case outrages our ideas as to the law and equity." We are not entirely unsympathetic with such a reaction. But, if it results from faults in the law itself, or from interpretations of the law in decisions other than ours, then we think we would not be justified in attempting to correct what may appear to us to be errors of the law-making department, or to parry the effects of decisions of a superior court.

It is insisted that we have held (and erred in so holding) "that when the Industrial Accident Board denies a claim for compensation for alleged hernia, and does not order the compensation carrier to furnish an operation, in order for the compensation carrier not to be liable under the general provisions of the law it must admit liability and tender an operation; and if the employee refuses the operation, in no event can it escape liability under the general provisions of the law." It is further insisted that we have held (and erred in so doing) "that when the Industrial Accident Board finds against the employee for an alleged hernia and does not order an operation the compensation insurance carrier in no event can escape liability under the general provisions of the law, and for a general injury."

The provision of the statute reading "the association shall provide competent surgical treatment by radical operation" undoubtedly imposes a duty, or confers a right or privilege, upon the compensation insurer. Whether it imposes a duty or confers a right or privilege, the existence of such duty, right or privilege is expressly limited to "cases where liability for compensation exists." About that proposition it would seem there can be no substantial ground for any difference of opinion. Upon this premise it becomes all important to know what is meant by "cases where lia-

bility for compensation exists." Does that language mean (1) cases where liability, if contested, has been finally adjudged, by a court of competent jurisdiction, to exist; (2) or, does it mean cases where the Industrial Accident Board, passing upon a claim for compensation, decides that liability for compensation exists; or (3) does it mean cases where the compensation insurer, without contest, admits liability, although it may be necessary to litigate connected or incidental questions? It seems to us that it must mean one or the other of these; the only other alternative being that it is meaningless.

The natural import of the language would suggest that it is the first of these three hypothetical meanings. That interpretation, however, must necessarily be rejected because in every claim taken to the courts upon a contest of liability for compensation, the power purportedly conferred upon the Industrial Accident Board in regard to an operation could never be exercised; since the essential condition of its exercise (the final determination of liability) could not arise until after all jurisdiction of the Board had ended by the transfer of jurisdiction to the court.

The second hypothesis—that the language refers to cases where the Industrial Accident Board, passing upon a claim for compensation decides that liability for compensation exists—seems to us to permit of better effect being given to all provisions of the statute; as also the general purpose of the statute; than either of the others. Upon that hypothesis, if the Board decides that liability for compensation exists, it may consistently order an operation, or refuse to on the merits of the question. (To save tiresome repetition we here and hereafter refer to the action of the Board in determining that because of disease or other conditions it is more than ordinarily unsafe to submit to an operation, as ordering an operation, and the contrary decision, as refusing to order an operation.) Under such a construction it would be considered that liability for compensation and liability to provide an operation are inseparable. That if liability for compensation exists then also liability, subject to the other prescribed conditions, of course, to provide an operation, exists; but if the decision of the Board be that no liability for compensation exists, then it would follow as a necessary implication that no liability to provide an operation exists. Further, since

liability to provide an operation would be dependent upon the existence of liability for compensation it would seem logical that an appeal to a court from a decision of the Industrial Accident Board on the question of liability for compensation would ipso facto suspend any order for an operation, or refusal to order an operation, and transfer jurisdiction of those questions along with the dominant and controlling question to the court. No necessity is apparent to us why giving such effect to an appeal should result in penalizing either party regarding an operation upon a final adjudication by the court of the dominant and controlling issue of liability for compensation. Why, it may pertinently be asked, we think, should a compensation insurer, believing that a claim against it is unjust, and that no liability for compensation exists, be, in effect, penalized by being forced to provide a free operation with all its necessarily prejudicial implications of a confession of liability when, upon appeal, the court may adjudge that no liability for compensation exists; particularly, since there is no provision for any reimbursement? Or, in such case, if the compensation insurer refuses to prejudice its contest of liability by providing an operation as ordered, and refuses to incur the expenses thereof, upon the consistent view that since it disclaims any liability for compensation it is not liable to provide a free operation, why, if it be finally adjudged that it is liable for compensation, should it be penalized by a denial of the right or privilege then to reduce the amount of its liability by an operation to rehabilitate the employee, by restoring his lost earning capacity, presumably to the mutual benefit of all parties? The intention should not, we think, lightly or unnecessarily be imputed to the Legislature to penalize resistance to claims for liability, regardless of possible lack of merit. Any claim for compensation which the compensation insurer believes to be without merit, unless the second hypothesis be correct, presents these alternatives to the compensation insurer: (1) to admit a liability deemed to be non-existent, and by the expenses of an operation, procure indemnity against a possible judgment, imposing an obligation to compensate possibly for total and permanent disability; or else (2) to resist the claim thereby incurring the hazard of being adjudged liable to compensation for total and permanent disability, with no indemnity, such as the right or privilege of reducing same by a successful operation, would, in part at least, afford, and this although the employee may at a comparatively small cost to himself by an operation have his lost earning capacity completely restored with no obligation to refund the difference, or without means by the compensation insurer of enforcing such obligation, if it existed. The natural result is to encourage the assertion of claims without merit in expectation that free surgical services may be provided regardless of the compensation insurer's liability for compensation. Compensation insurers are placed under a measure of coercion in cases of contested liability to provide operations as in the nature of insurance against the hazard of being cast in a final judgment with an obligation to pay possibly thousands of dollars.

An obstacle to the adoption of this second hypothesis is that, so far as we can see, it cannot be harmonized with the decisions in Tally v. Texas Employers' Insurance Ass'n, Tex.Com.App., 48 S.W.2d 988; Texas Employers' Insurance Ass'n v. Marsden, 127 Tex. 84, 92 S.W.2d 237, and other decisions following them to the same effect. According to those decisions the power of the Industrial Accident Board to order an operation is not dependent upon its decision that liability for compensation exists. It is held that the order for an operation is interlocutory, and, if so, of course, it is distinct from and necessarily precedes the decision of the Board upon the question of liability for compensation. We do not understand from those decisions that when the Board decides the issue of liability as embodied in an award of compensation, or denial of compensation, the right of appeal is not matured, or that the prescribed notice of intention not to abide the decision or the filing of suit may be delayed beyond the time specified in the statute. On the contrary, it reasonably appears from said decisions that from the time of ordering an operation at least six months must elapse before the final decision can be made. If this be the proper construction of said decisions, then it is obvious that the clause "where liability for compensation exists" cannot refer to the decision of the Industrial Accident Board that such liability exists since in that case the power to order an operation would have been exercised before the happening of the condition upon which the power comes into existence.

If, however, the decisions are susceptible to the construction that the Industrial

Accident Board in making an interlocutory order for an operation also as precedent thereto, or, in connection therewith, impliedly makes an interlocutory decision that liability for compensation exists, then, of course, the particular obstacle to the adoption of the second hypothesis does not exist. But, if so, an equally serious difficulty is presented by the decisions in Texas Employers' Insurance Ass'n v. Tally, 129 Tex. 134, 102 S.W.2d 180; Id., 132 Tex. 547, 125 S.W.2d 544; Johnson v. Employers' Liability Assur. Corp., 131 Tex. 357, 112 S.W.2d 449, 450. In these cases it is held that "when a hernia case reaches a court, the rights of the parties have already become fixed by the events previously transpiring, and that the court only has the power and jurisdiction to finally try the case and enter one final judgment"; that the court in such case "has no power to require a' hernia operation." It would seem to be implicit in that interpretation of the law that there is no relief for the compensation insurer, or the employee, from an interlocutory order of the court to the compensation insurer to provide an operation. The effect is the same as to say that from such order there is no right of appeal. The compensation insurer must provide the operation regardless of its disclaimer of liability for compensation and notwithstanding upon appeal it may be finally adjudged not liable; or, refusing to do so, if upon appeal it be adjudged liable for compensation, the court is powerless to permit it to discharge its liability by restoring the lost earning capacity of the employee through an operation at a comparatively small cost, plus 26 weeks' compensation, as against possibly 401 weeks. The result of this interpretation seems to be to render the provisions relating to operations of no benefit to either party, apart from consequences violative of one's sense of right and fairness. However, we see no way of interpreting the clause in question according to the second hypothesis without necessary conflict with said decisions.

The last remaining alternative is to construe the words "cases where liability for compensation exists" as referring to cases where liability is admitted. The above mentioned decisions offer no obstacle to the adoption of this hypothesis. It has the merit of freedom from the incongruity presented by the action of the compensation insurer while attempting to resist the claim of liability at the same time impliedly confessing liability by providing a free operation. There is also obviated any question of incurring a greater hazard by a refusal to provide an operation. This third hypothesis is not, however, unobjectionable. Its acceptance imputes to the Legislature the aforementioned intention to place a premium upon the assertion of claims, regardless of merit; or a penalty upon the resistance to claims regardless of merit. The Legislature must be deemed to have said to compensation insurers, in effect that if regardless of the merits of any claim you will admit liability and provide an operation, or take the steps in that respect, prescribed by law, you have several chances of greatly reducing your potential liability; but, on the other hand, if you contest liability, regardless of the apparent lack of merit in the claim, then if you should be adjudged liable you are denied the right to discount your liability. On the contrary, you may be adjudged to pay for total and permanent incapacity, although the employee may take a small part of such payment, and by an operation completely restore his lost earning capacity, for which you have paid, and keep the difference.

Fortunately, in this case we are not put to the necessity of adopting either the second or third hypothesis as the true interpretation of the statute, to the rejection of the other, it being sufficient in the disposition of the questions here presented that either one or the other is 'the true interpretation. Whether the words "cases where liability for compensation exists" refer to a decision of the Industrial Accident Board, that such liability exists, or refer to the admitted existence of liability, neither of those conditions is present in this case. The Board decided against the existence of liability for compensation and the compensation insurer has not admitted liability. If, therefore, it appears unfair that appellant should not be permitted to discount its liability in the event that it finally be adjudged by the court to exist, by providing an operation, then the unfairness results from the provisions of the statute or as the effect of decisions before mentioned.

 Appellant seems to assume that hernia is a "specific" injury and is only conditionally a general injury. The very opposite, we think, is true. The only dif-

ference between a so-called specific injury and a general injury is that as to the one the incapacity is in effect declared by law—liquidated; while as to the other it must be proved; as to the one the law determines the extent of the recovery of compensation; as to the other, the facts within prescribed limitations, determine the extent of recovery. Hernia is an injury as to which the law makes special provisions. Such provisions are, therefore, necessarily of the nature of exceptions to the provisions governing injuries generally. Section 12b will not reasonably lend itself to a construction that it provides compensation in a specific amount, regardless of the degree of incapacity resulting from a hernia, and only upon prescribed conditions, an amount to be determined as in case of general injury. The provisions of the section will not reasonably admit of any other construction than that hernia is the same as to compensation as any other general injury with provisions that under exceptional conditions the extent of compensation is declared by law—or, in other words, compensated as a specific injury. True, the entire section contains no provision for the payment of any compensation whatever for a hernia injury except upon the condition precedent that the Industrial Accident Board, following the prescribed procedure, either: (1) determines that it is more than ordinarily unsafe (for the employee) to submit to an operation, or (2) that it is not more than ordinarily unsafe. But in prescribing exceptions to general provisions of the law governing compensation for injuries it was not necessary to repeat those general provisions. The general provisions continue to control, modified only as to the subject matter of the exceptions.

■■■ May hernia as an injury result in total and permanent incapacity? If so, what provision fixes a definite and certain compensation, or varies the compensation from that provided for any other injury? It must be found, if at all, in said section 12b. If every provision therein for a more limited compensation is expressly conditional, as it manifestly is, then the conclusion is irresistible that only upon the prescribed conditions may the compensation be limited.

One condition upon which compensation for hernia is conditionally limited to a specific recovery is expressed and two others possibly implied. The one expressed is to the effect that upon the conditions that liability for compensation exists and that the Board orders an operation and the employee submits thereto, and the operation is successful, the compensation shall be limited to the surgical services and payment for 26 weeks. One possibly implied is that upon condition that the Board having its jurisdiction invoked determines against an operation but the employee submits any way, and the operation is successful. The other possibly implied is that where the compensation insurer voluntarily offers to provide an operation and the employee voluntarily submits, thus obviating the necessity of any action by the Board, and the operation is successful.

On the other hand, the section contains a number of expressions which in their absence would no doubt be implied, showing that the general provisions govern except as specifically modified. For example, if the Board decides against an operation and the employee does not submit, his injury is the same as any other general injury. If the Board orders an operation but the employee refuses, the general provisions of the law govern, except the compensation is limited to *not exceeding* one year. If an unsuccessful operation does not result in death the employee, according to the statute, "shall be paid compensation *under the general provisions of this law the same as if such operation had not been had.*" (Italics ours.). Paid what? For total and permanent disability if shown to exist, not exceeding 401 weeks? We think there can be no doubt of it. Lastly, if the hernia with or without an operation results in death, the compensation shall be the same as any other injury, except where the employee after proper order has willfully refused to submit to an operation.

In addition to the authorities cited in the original opinion we may add Tally v. Texas Employers' Insurance Ass'n, Tex. Com.App., 48 S.W.2d 988, 990, which, in reaffirmance of Texas Employers' Insurance Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967, says, "If he [the employee] was willing to submit to the operation, and the insurer refused to furnish it, he was entitled to be compensated under the general provisions of the law according

to the degree of incapacity which the board might find he had suffered by reason of his injury."

Appellant strenuously insists that its duty, if any, to provide an operation was dependent upon an order for the operation by the Board. Would that obviate the hardships complained of? Would not appellant have been forced to elect between the same alternatives? We fail to see that such would not be the case.

' It is our conclusion that the motion for rehearing should be overruled. It is accordingly so ordered.