ETTER *v.* BLUE DIAMOND COAL CO.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

Boyce Griffith, of LaFollette, for appellant.

Joe M. Carden, of LaFollette, and Chester C. Coker, of Jacksboro, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a suit to recover compensation under the Workmen's Compensation law of Tennessee. Williams' Code, sec. 6851 et seq. The injured employee, Edward Etter, sustained an injury to the left side of his lower abdomen while operating an electric sander upon the floor of a building belonging to the defendant company. The petition alleged that the accident happened on May 27, 1946, but was later amended to allege that it was on May 15, 1946, instead of the 27th day of May, 1946; that the sander was operated by an electric current which was carried to the machine by a long cable and that the said cable became fouled up in some way with the machine which caused it to "jump and buck," striking and gouging the petitioner in the lower left part of his abdomen with such force that he was then and there ruptured; that he immediately suffered an acute pain in the abdomen and still suffers pain. It is further alleged that his employer had full knowledge of the injury and written notice of it was not necessary; that while he suffered from the injury he continued to work from necessity

until January 17, 1947, at which time he was "let out" by the defendant when he declined to accept the job of unloading coal. The petitioner claimed that due to his injury he was not able to unload the coal and that defendant refused to give him other work and also refused to give him an operation, telling him "to go and get a truss."

The defendant filed a demurrer coupled with an answer. The defenses thus interposed were: (1) that the suit was barred by the statute of limitations of one year, (2) that no notice was given of the accident as required by Code Section 6873, and (3) that the alleged hernia did not appear suddenly or immediately following the accident.

The Chancellor overruled the demurrer and the case was heard on oral testimony. All issues, both of law and fact, were decided in favor of the petitioner and a decree entered awarding him "the sum of $18.00 per week from January 17, 1947, until such time as the petitioner, Edward Etter's disability is removed by surgical operation by the defendant company or until the petitioner has received the amount of $5,000.00." The above quotation from the decree clearly shows that compensation was allowed as for total permanent disability. The opinion of the Chancellor was made a part of the record, in which it appears that he found the petitioner's disability total and permanent and that "the allegations in the petition are sustained by the proof and that the petitioner is entitled to the relief sought."

The defendant made a motion for a new trial upon numerous grounds which motion was overruled and appeal prayed and granted to this Court. We decline to enter upon a discussion of each of the fifteen assignments of error inasmuch as it is conceded on the brief

of counsel that many of them are cumulative and relate to only one question. The Chancellor's finding (1) that the suit was not barred and (2) that the defendant had full knowledge of the injury, cannot be made the basis of an assignment of error since there is material evidence to support his finding, contrary to the defendant's contention. The argument of counsel for the coal company that the petitioner failed to deny certain alleged admissions made by him to two of its witnesses as to the time when the accident occurred, which if true would bar his suit, is not conclusive of the question. He refused to admit having made such admissions. On the contrary he stated that he fixed the day of the accident by the records of the company (shown him by the superintendent) which records showed that on the day he was injured the defendant delivered a stove to his house which had been previously rented. It was the petitioner's contention that he was injured on the day the stove was delivered to his house.

Responding to the question of lack of notice to the company we find that when the accident occurred the petitioner suffered such intense pain ("different from any pain he had ever experienced before"); that he had to sit down on the floor for thirty minutes because of the severity of the pain. He stated to other employees who came to his aid, including his foreman, that he had hurt himself. Later he was sent to the company's doctor for an examination. Of course the petitioner did not claim to his fellow employees or his foreman that he had sustained a hernia because he did not know the extent of his injury. But it is not seriously controverted that the defendant had full knowledge of the accident at the time. Moreover the company's doctor a few days later upon

examination diagnosed the injury as a hernia. The accident happened on Tuesday and the petitioner discovered that he had a hernia on the following Saturday and that it was about the size of a hen egg. When asked ''How come you to notice the knot?'' He replied ''Usually when a man working on carpenter work, if he has not got conviences, he won't, can't take a bath every evening; I didn't take a bath until Saturday evening; in taking a bath just before going home I noticed that knot.''

There is some dispute as to when the company's doctor first saw petitioner and diagnosed his injury as a hernia. He first discussed the matter with Mr. Elloy, the superintendent, on May 21 or 22. Now according to petitioner he saw Dr. O'Brien the next day which would be May 22 or 23. The deposition of the doctor was taken and he fixed the date of his examination from memory as ''long in April last year I believe.'' He gave it as his opinion that the hernia could have been caused by a lick and, while it would as a rule show immediately thereafter, it might appear a few days later; that a lick in the side would cause some swelling. It seems clear from the foregoing facts that the company had full knowledge that petitioner had a hernia resulting from the injury, and the fact was brought home to its superintendent and the company's physician within five or six days after it occurred; at least this was the finding of the Chancellor and we are bound by it. Moreover no prejudice is shown by a failure to give written noitce as required by the statute.

The next assignment of error to which we direct our attention is ''there was no evidence that the hernia complained of appeared suddenly'' or followed ''immediately after the accident.'' It is insisted by counsel for the de-

fendant that the petitioner failed to make out a compensable injury as provided in Code Section 6892a, which reads as follows:

"Hernia; compensation for and when allowed.—In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the court:

. "First. That there was an injury resulting in hernia or rupture.

"Second. That the hernia or rupture appeared suddenly.

"Third. That it was accompanied by pain.

"Fourth. That the hernia or rupture immediately followed the accident.

"Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed."

While our statute expressly requires proof "that the hernia or rupture appeared suddenly," or "immediately followed the accident," we would have to give it a very narrow construction to hold that the hernia must appear instantaneously, or at the moment of the accident. In order to remove the question of the causes of a hernia from the field of speculation the Legislature conceived it to be important to write into the act the proviso: "That the hernia or rupture did not exist prior to the accident for which compensation is claimed." When this is read in connection with other sections, to which we have referred, to wit that "the hernia . . . appeared suddenly" or "immediately followed the accident," these expressions must be construed to mean that a hernia is "immediate" and compensable if it appears so soon after the injury that it would not be possible to attribute it to any other cause.

The problem before us is one of first impression in Tennessee. Similar amendatory statutes have been enacted in other states, and decisions construing them are annotated in 114 A. L. R. 1341, 1342. The construction which we have here given to our statute finds support in *Borodaeff* v. *Province Line Dairy, Inc.*, 109 N. J. L. 25, 27, 160 A. 513, 514, wherein it was said:

"Thereby it seems clear that the phrase 'immediately followed the cause' should not be construed to mean 'instantly followed the strain.' Probably in most such cases there is some appreciable lapse of time between the cause and the descent. No doubt the word 'immediately' is sometimes used in the sense of 'instantly,' but that is by no means its only meaning. Webster's New International Dictionary gives the following definition of 'immediately': 'Without intermediary; in direct connection or relation; in a way to concern or affect directly or closely; without intervention of any person or thing; proximately'

"We think that the phrase 'immediately followed the cause' should be held to mean 'soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work.' "

In *Maryland Casualty Co.* v. *Robinson*, 149 Va. 307, 141 S. E. 225, 227 the court in construing a statute (identical with ours) held: "we do not, however, construe the provisions of this section to exclude compensation for hernia simply because an external knot is not visible immediately upon rupturing of the abdominal wall." To the same effect, *Hay* v. *Swiss Oil Co.*, 249 Ky. 165, 60 S. W. (2d) 385, *Ussery* v. *Erlanger Cotton Mills*, 201 N. C. 688, 161 S E. 307, *Hallack* and *Howard Lumber Co.* v. *Bagly*,

100 Colo. 402, 68 P. (2d) 442; *McBride Co.* v. *Kuehn*, 168 A. 64, 65, 11 N. J. Misc. 764, *Duff Hotel Co.* v. *Ficara*, 150 Fla. 442, 7 So. (2d) 790, *McNaboe* v. *General Motors Corporation*, 47 A. (2d) 345, 346, 24 N. J. Misc. 161, *Strauss* v. *Wright Aero. Corporation*, 135 N. J. L. 371, 52 A. (2d) 412.

██ The word "immediately" must gather its meaning from its application. It is not a word of absolute significance. It depends upon the circumstances and events in connection with which it is used. Happening "suddenly" or "immediately following" does not mean happening instantaneously. *Lovell* v. *Williams Bros.*, Mo. App., 50 S. W. (2d) 710, 713. When our Legislature used the word "suddenly" in Code Section 6892a, here invoked, it meant that the hernia must have developed without warning, or, as in *Lovell* v. *Williams Bros.*, *supra*, "without previous notice"; and that it is not to be attributable to any pre-existing cause.

██ Following the foregoing interpretation we hold that the hernia, for which compensation is sought in the instant case, "appeared suddenly" in that it had no prior existence, and followed the accident "immediately" since it could not, by any possibility, be attributed to any other cause. The opinion of the Chancellor upon each of the foregoing questions is sustained and the assignments of error based thereon are overruled.

The last and concluding assignment of error is as follows:

"It was error on the part of the court to allow petitioner the maximum weekly compensation for an unscheduled injury, there being no allegation in the petition that his earning capacity had been reduced by his injury and no proof in this regard, except that while

petitioner continued to work for it, his weekly wages were greater after than before."

We think the Chancellor was in error in holding that petitioner sustained a total permanent disability. It is conceded on the record that petitioner worked from the date of the accident, May 15, 1946, until January 17, 1947, at a remunerative wage, to wit approximately $47.00 per week. It is not contended that he is unable to follow some gainful occupation in his present injured condition.

The evidence shows conclusively that petitioner has sustained only a permanent partial disability and the amount of compensation for which the defendant is liable is governed by Code Section 6878 (Williams Supplement), which reads as follows:

"In all other cases of permanent partial disability not above enumerated the compensation shall be sixty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition subject to a maximum of eighteen dollars per week. Compensation shall continue during disability, not, however, beyond three hundred weeks."

The test is whether or not there has been a decrease in petitioner's capacity to earn wages in any line of work available to him and which he is reasonably qualified to perform. *Standard Surety & Casualty Co. of New York* v. *Sloan*, 180 Tenn. 220, 173 S. W. (2d) 436, 438, 149 A. L. R. 407.

We think the Chancellor was correct in directing that compensation payments begin on January 17, 1947, the date the petitioner testified he was unable to unload coal. He received his usual wage up to that date.

Upon the remand the trial court will again hear proof and fix the amount of petitioner's compensation under the above Code Section and determine if there has been a decrease in his earning capacity as of January 17, 1947, and if so to what extent. The payments will continue for the period of time fixed by the above statute and in such amount weekly as may be adjudged. In the event a surgical operation is furnished, the trial court must then decide at what time payments shall cease, based upon proof as to when petitioner is relieved of his disability. Whether or not the amount of wages earned, if any, since his disability and especially since January 17, 1947, should be deducted from compensation due, or to be paid, is for the determination of the Chancellor upon the remand. See *Russell* v. *Big Mt. Collieries*, 156 Tenn. 193, 299 S. W. 798; *Sanders* v. *Blue Ridge Glass Corporation*, 161 Tenn. 535, 544, 33 S. W. (2d) 84 and *Standard Surety & Casualty Co. of New York* v. *Sloan, supra.*

This case will be remanded for the purposes herein stated. The plaintiff in error will pay the costs of the appeal.

All concur.