TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

James B. BRANTLEY, Appellee.

No. 5729.

Court of Civil Appeals of Texas.

El Paso.

Oct. 6, 1965.

Rehearing Denied Oct. 27, 1965.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Odessa, for appellant.

Warren Burnett and Robert D. Pue, Odessa, for appellee.

FRASER, Chief Justice.

This is a workmen's compensation case in which the plaintiff sued for workmen's compensation benefits and in which the plaintiff alleged that he sustained an accident on or about February 26, 1958, while in the course of his employment for Gardner Brothers Drilling Company, Inc. in Ector County, Texas. It was alleged by the plaintiff that he had sustained an injury resulting in a right inguinal hernia which could not be successfully repaired and which had resulted in total and permanent disability. The defendant contended that the plaintiff had failed to file his claim for compensation within six months from the date of the alleged injury and that good cause did not exist for the plaintiff's delay in failing to file his claim; and that the plaintiff had no disability resulting from his injury.

The case was tried before a jury and the case was submitted to the jury on the plaintiff's theory that he had sustained a hernia within the meaning of the Workmen's Compensation Act. In response to the special issues submitted by the trial court, the jury found that the plaintiff believed until about the time that his claim was filed that his injury would not disable him; that such belief prevented him from filing his claim up until the date that it was filed on July 7, 1960; that the plaintiff's belief constituted good cause for not filing his claim sooner than it was actually filed; that the plaintiff sustained an injury which resulted in a hernia; that the injury was sustained by the plaintiff in the course of his employment; that the hernia appeared suddenly and immediately following the injury; that the hernia did not exist in any degree prior to said injury; that the hernia was accompanied by pain; that the plaintiff's hernia operation was not successful; that the plaintiff had sustained total and permanent incapacity as a result of the injury but that the incapacity did not begin until July 7, 1960; that the plaintiff had worked in his employment in which he was working on the date of the accident at least 210 days in the year immediately preceding the date of the accident; that the plaintiff's average daily wage was $25.00 per day; that the plaintiff was entitled to lump sum compensation and that prior and subsequent injuries had not contributed to the plaintiff's condition of incapacity. The defendant filed an amended motion for judgment non obstante veredicto and motion to disregard special issue jury findings. The plaintiff filed a motion for judgment on the jury findings.

The trial court entered an order on the 24th day of June, 1964, granting the plaintiff's motion for judgment on the jury findings and denying the defendant's amended motion for judgment non obstante veredicto and motion to disregard special issue jury findings. Judgment was entered by the court awarding the plaintiff compensation benefits in the amount of $8,774.30 on June 25, 1964. The defendant properly perfected the case for appeal and now as appellant brings the case before this court for review.

■ Appellant brings up three points of error, all of which are no evidence points. In Point One, for example, appellant maintains that the court was in error in overruling its amended motion for judgment non obstante veredicto because there was no evidence to support the jury's findings on good cause for the plaintiff's failure to file a

claim within the statutory six months' period. As stated in appellant's brief, in "no evidence" cases the appellate court must consider only that evidence, if any, which, viewed in its most favorable light, supports the jury's findings. Where the appeal is from the failure of the court to grant a motion n. o. v., all testimony must be considered in the light most favorable to the party against whom such motion is brought. In its first two points of error, the appellant charges the court with error in failing to grant a judgment n. o. v. because there was no evidence to justify the jury's findings relative to good cause for plaintiff's failure to file his claim on time; and the jury findings relative to the sudden appearance of a hernia accompanied by pain immediately following the injury and that the hernia did not exist in any degree prior to the accident. In its third point appellant contends that there was no evidence of plaintiff-appellee's wage rate as required by the statute.

Appellee cites us to cases holding that if an operation is unsuccessful, the injured person shall be paid compensation as if such operation had not been had. He also cites cases holding that if the operation is successful, the injury becomes a specific injury; if such operation be unsuccessful, it is considered as a general injury. In Southern Casualty Co. v. Fulkerson, 45 S.W.2d 152 (Tex.Com.App., 1932), the court, after discussing the necessity of determining the success of a hernia operation, states:

"* * * If the operation is not successful and does not result in death the injury is compensable as a general injury. In other words, if the operation is successful the injury becomes a specific injury. If the operation is unsuccessful it is a general injury."

Appellee cites other cases to the effect that compensation for a general injury depends on disability, and not on the injury itself, as will appear later in this opinion. Here, giving details as to how and why, the plaintiff testified that the operation was unsuccessful, and the jury so found.

In its first point appellant charges, in support of its motion for judgment n. o. v., that there was no evidence to support the jury's finding that plaintiff had good cause for not filing his claim within the statutory time limit. The record indicates that there was testimony from the appellee, that although he was injured in 1953, he did not believe that it was a serious injury, his testimony being that the doctor "thought it was kind of a strain there and I would be all right"; that he thought the swelling was going to be all right, and that the "thing" or injury would probably get all right; that he was following the doctor's instructions to sit in a tub of hot water; and that he was wearing a truss for comfort and protection. Appellee also stated that even though he wore a truss to protect the injury or swelling, he thought "it might kind of get all right, which I thought it would"; but that when he was lifting a heavy piece of material in early April or late March of 1960, it "broke down". After his discharge by his employer in May, 1960 he took a few days off to go fishing, and in his testimony he states that his employer told him to "take my vacation and look around for a job"; that after he had been fishing a few days he returned, and the operating doctor told him to take off some weight; and that he was finally operated on June 23, 1960 and filed his claim during the first week or so of the following July.

Summing up, we have the testimony of the plaintiff that in 1958 he does not recall Dr. Marinis telling him that he would have to have an operation; that he understood the doctor to tell him at that time to sit in a tub of hot water and to use a truss for protection, and that from that time on until the latter part of March or early April of 1960, he believed the condition, whatever it was, would heal, disappear or go away, and he ascribes such as his reason for not filing his compensation claim any sooner.

We are obliged to consider and weigh the evidence here by the nature of appellant's points of error as set forth by it, and

the rules applicable thereto as previously outlined in this opinion.

■ We believe that evidence here sustains the jury's finding, bearing in mind that appellee maintains that the last operation was unsuccessful, and the cases indicate that under such circumstances compensation is for *general injury* based on disability. National Mut. Casualty Co. v. Lowery, Tex.Civ.App., 135 S.W.2d 1044 (136 Tex. 188, 148 S.W.2d 1089); Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399 (Tex.Com.App.); Southern Casualty Co. v. Fulkerson (supra); Zurich General Accident & Liability Ins. Co. v. Chancey, Tex.Civ.App., 166 S.W.2d 966 (err. ref., w. o. m.). In the last-cited case (Zurich), the court stated as follows:

"The authorities cited by appellant do not sustain its proposition of an instructed verdict. Johnson v. Employers Liability Assurance Corp., 131 Tex. 357, 112 S.W.2d 449, clearly recognizes the right of the claimant to plead 'good cause' for a general injury originating in a hernia; this authority supports our conclusions on this point. Consolidated Underwriters v. Beettner, Tex.Civ.App., 106 S.W.2d 1097, was ruled by this court as a claim for hernia and not as a claim for a general injury, resulting from the hernia. It is also apparent on the face of the opinion that our judgment was controlled by our conclusions that appellee had no cause of action of any nature; otherwise the judgment would have been reversed and the cause remanded for a new trial on the principle announced by the Commission of Appeals in Johnson v. Employers Liability Assurance Corp., supra."

Appellant has presented several cases where the courts have held that good cause did not exist for one reason or another, but we believe that there is evidence here to support the jury's finding that good cause did exist. Again we must bear in mind the nature and application of appellant's appeal as evidenced by the wording of his points of error. It has been held that where a claimant has a bona fide belief that his injuries are trivial rather than serious, such is sufficient to constitute good cause for delay in filing claim. Also it has been held that the rule of what an ordinarily prudent person would have done under the same or similar circumstances is the rule to be applied. In the record before us the appellee had had two prior hernia operations (which the record shows to have been successful). He did not file a claim on either, and maintained that he did not file a claim here until he was assured that an operation for hernia was necessary, and then only when he was convinced in his own mind that such operation had been unsuccessful. A somewhat similar reasoning is found in recent cases. Texas Casualty Insurance Company v. Beasley, 381 S.W.2d 236 (Tex.Civ.App., n. w. h.); Hawkins v. Safety Casualty Company, 146 Tex. 381, 207 S.W.2d 370. It was stated in the Beasley case, supra, "Recovery, not compensation, was uppermost in his mind, evidenced not only by his words but by his actions, courageous actions." We do not believe the cases presented by appellant here are similar or controlling in the matter before us. In each case the language of the court and the facts are, to us, different and to be distinguished from this controversy, governed as it is by the nature of appellant's points alleging error because of the trial court's refusal to grant the motion by appellant for judgment n. o. v. Appellant's first point is accordingly overruled.

Appellant's second point alleges that the trial court committed error by overruling its motion for judgment non obstante veredicto because there was no evidence to support the jury's findings that a hernia appeared suddenly and immediately following the injury, and that the hernia did not exist in any degree prior to the alleged accident. Article 8306, T.R.C.S., section 12b, provides that in order to recover it must be definitely proven that there was an injury resulting in hernia; that the hernia appeared

suddenly and immediately following the injury; that the hernia did not exist in any degree prior to the injury for which compensation is claimed; that the injury was accompanied by pain. The appellee testified that on the day of his injury, February 26, 1958, while he was lifting a heavy piece of iron, he "felt kind of a sting there in my right side and just kind of a sharp pain."

"Q Is that down in your groin area?

"A That is right. I never thought too much about it and I went on and carried the sub on to the rig and so that night kept getting sore in there and I looked and it was kind of a swelling or puffed out place there."

The treating and operating doctor, Dr. Marinis, testified that when appellee came to him in 1958, he was suspicious, but not sure, of a hernia or hernia recurrence. Appellee testified that he went on and worked until March or April of 1960, when, as he said, it really broke down or broke out on him. He was notified in May that he was fired, after which he took the aforesaid four or five day fishing trip, then returned to his home to spend the rest of his vacation and to see Dr. Marinis, who was the treating doctor and surgeon, at which time the appellee states the doctor told him to take off a little weight. He was then operated on in June, 1960.

■ Courts have passed on the above cited provisions of the Texas law relative to the matter before us, and have stated and made very definite efforts to define the various provisions of section 12b, Article 8306. It has been held that the words "suddenly and immediately" are not intended to mean "instantaneous", but are relative terms. Great American Indemnity Co. v. Gravell, 297 S.W.2d 371 (Tex.Civ.App., n w. h.). In the above case (Gravell), Justice Pope stated:

"The testimony touching Gravell's condition, both before and after these occurrences, raises argumentative points,

but certainly the evidence mentioned supports the jury finding of the sudden and immediate appearance of the hernia. Those terms are relative. Guerra v. State, 155 Tex.Cr.R. 306, 234 S.W.2d 866, 868, 869. They are not necessarily the equivalent of 'instantaneous.' Layton v. Hammond-Brown-Jennings Co., 190 S.C. 425, 3 S.E.2d 492; Etter v. Blue Diamond Coal Co., 187 Tenn. 407, 215 S.W.2d 803, 806; Consolidated Coal & Coke Co. v. Lazaroff, 109 Colo. 248, 124 P.2d 755."

In view of the appellee's testimony, we must hold that there was evidence to support the jury's finding. Appellee states that he had pain and suffering at the time of the injury. Also, there is nothing in the record to show that there was any protrusion prior to the accident in 1958 other than the two prior hernias, which were successfully operated. In other words, there was no protrusion after the other operations until the one here involved appeared. The courts hold that protrusion is a necessary element in the proof of the presence of the hernia. Therefore, we cannot say that there was "no evidence" to support the jury's finding in favor of the claimant here. Appellant's second point is accordingly overruled.

■ Appellant's third point charges that there was no evidence of plaintiff's wage rate under Article 8309, T.R.C.S., and that therefore appellant's amended motion for judgment non obstante veredicto should have been granted. Appellant first points up the change in the law, which occurred and became effective in 1959, the change in effect excusing the employee from proving that he had worked in compliance with the statute for substantially the whole of the year immediately preceding the injury, and providing that he need only prove that he had worked 210 days of the preceding year. Up to the time of this change, the courts had held that 300 days of work were necessary to meet the requirement of the statute. Issue 19, as submitted to the jury, asked if the appellee had worked in the employment

in which he was working on February 26, 1958 at least 210 days in the year immediately preceding such date. We agree with appellant's position that the change in the law was not in effect and did not affect plaintiff's position, as the law governing his case was the law in effect at the time of his injury, which was in 1958, at least a year before the change went into effect. In other words, the date of the alleged injury governed as to which statute was to be applicable. However, we believe that the appellee substantially met the requirement. Appellee testified that he had worked regularly and steadily for his employer during the preceding year, and in fact had worked for this same company more than twenty years, right up to the time of his discharge in 1960, which was some two years after his alleged injury. Appellant does not contest appellee's statement that he had worked for Gardner Brothers continuously since 1935. When asked if he got in as much as 210 days in that year, appellee answered "Yes, more I imagine". He was then asked if he earned about $25.00 or so a day, and he replied, "Well, it was by the month, $700.00 a month." While this question is not easy, we believe that the testimony in the record and the answer to Issue No. 20, which was that the average daily wage of plaintiff was $25.00 a day, was sufficient in view of the cases that have passed upon matters similar to this. The testimony was not contested, nor was any injury to appellant shown. We are dealing here with a general injury, where compensation is based on disability. As stated in Texas Employers Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399 (Tex.Com.App.):

"This necessarily leads us to hold that where an employee is in the employment of another for the full period of one year prior to an injury, and is paid an annual salary, or a monthly salary for the full twelve months, and if by reason of the nature of the work he is doing, or the rules, regulations or conditions under which he is required to work, he may not actually work as much as 300 days during such year, he shall nevertheless be regarded as having worked substantially the whole of such year, so as to make applicable the rule of dividing his annual salary or earnings by fifty-two in order to determine his applicable weekly wages."

Also, in Pacific Employers Insurance Co. v. Guillory, Tex.Civ.App., 310 S.W.2d 584 (ref., n. r. e.), the court states:

"By the nature of the appeal taken there is no question but what claimant must be considered as having been totally disabled at the time of the trial. There is a question about the permanency of his incapacity. There is also a question about whether claimant discharged the burden of proof incumbent upn him in connection with proof of his wage rate. Aside from these questions, the other points to be considered relate to the character of the argument made by the attorney for the claimant, the insurer contending that it was inflammatory and prejudicial and that it injected improper information before the jury, all of which amounted to reversible error.

"By a point of error the contention is made that under the undisputed evidence the claimant did not work substantially a year immediately prior to his injury and that the court erred in entering judgment for compensation based upon the maximum rate. The proof did not show the rate of pay being earned by claimant at time of his injury, nor whether it was calculated on a daily or hourly basis. It was shown that he was not working on a salary. He worked over a period longer than the full year immediately prior to his injury in the same employment, the records indicating 287 working days, and was paid therefor the sum of $5,469.40. Since it therefore appears that he averaged more than $100 per week, it seems clear that his compensation rate could not have

been other than the maximum, this being a case of general incapacity. Reversal in such a case should be refused even though there has been a failure to comply in all particulars with the statutory formula for determining wage rate. Consolidated Cas. Ins. Co. v. Ray, 1954, Tex.Civ.App., San Antonio, 267 S.W.2d 880, writ ref., n. r. e.

"Under the authority of Casualty Reciprocal Exchange v. Stephens, 1932, Tex.Com.App., 45 S.W.2d 143, we are of the opinion that there could have been no disputed issue for the jury to pass upon since claimant had worked for more than one year prior to his injury at the same employment and presumably at a wage rate which was constant in character and amount."

In Consolidated Casualty Insurance Co. v. Ray, Tex.Civ.App., 267 S.W.2d 880 (n. r. e.) the court states as follows:

"Appellant's fourth point is likewise overruled. It appears as a matter of law that appellant's compensation rate was the maximum allowed by statute, to wit, $25 per week. In the absence of a showing of injury, this Court has repeatedly refused to reverse because of a failure to comply in all particulars with the statutory formula for determining the wage rule. [citing authorities] The evidence shows that appellee had been working for the Sinclair Refining Company, at its Corpus Christi plant, for some eight years; that his weekly salary or wage was approximately $90 per week for a forty-hour week, and that he was paid extra for overtime. The jury found that his average weekly wage was $94, counting overtime. This issue need not have been submitted to the jury, as the undisputed evidence shows that appellee, if entitled to compensation for a general injury, was entitled to have such compensation computed on the maximum rate permitted by statute. Article 8306, § 10."

The last cited case points up the rule to be applied where a general injury case is under consideration involving a regular or long-time employee, paid by week or month. As in the case above, no injury is shown in this matter, and it must be remembered that appellee had worked for this same company some twenty years prior to and including the time of his alleged injury. We think that the plaintiff's testimony, coupled with the jury's answer to Issue No. 20, was sufficient in this case to establish the wage rate. We do not believe Issue No. 19 either helped or destroyed the position of either side. It is simply evidence in the record showing claimant had worked a minimum of 210 days. The appellant's third point is accordingly overruled.

All of appellant's points having been overruled, the decision of the trial court is affirmed.