Jimmy L. Floyd

*v.*

Travelers Insurance Company and Thomas E. Burton
d/b/a B & B Builders.

463 S.W.2d 407.

(*Nashville*, December Term, 1970.)

Opinion filed December 21, 1970.

Petition for Rehearing Denied February 16, 1971.

T. Arthur Jenkins, Manchester, for petitioner, appellee.

Garrett, Shields & Rogers, J. Stanley Rogers, Manchester, for respondents, appellants.

Mr. Justice McCanless delivered the opinion of the Court.

The petitioner seeks a decree for benefits under the Workmen's Compensation Law of Tennessee for medical expenses, for compensation for temporary total disability, and for compensation for permanent partial disability growing out of an accident that he sustained on March 14, 1966. From a decree granting the petitioner

the relief for which he prayed the defendants, the employer and his insurer, made a motion for a new trial, which the Chancellor overruled, and have appealed to this Court.

The undisputed facts are that on March 14, 1966, while the petitioner, a carpenter, and a fellow employee were carrying a jointer, weighing about three hundred pounds, down a flight of steps the fellow employee in some manner lost his balance and the weight of the jointer fell on the petitioner striking him in the groin or abdomen and injured him. He felt a sharp pain but at the time noticed no knot or protrusion which would have indicated that he had sustained a hernia. Upon his return to his home the petitioner discovered that he was passing blood in his urine, and on March 16, 1966, two days after the accident, he saw his physician, Dr. John Shields, to whom he described his symptoms complaining of pain in his stomach and abdomen and at his pubis over the pelvic bone. On that day he had an elevated blood pressure and was admitted to the clinic of Dr. Shields, but after twenty-four hours he was transferred to Murfreesboro where he entered the hospital and was referred to Dr. John M. Bryan, a urologist, who examined him with reference to the bleeding, known technically as hematuria. Within a few days the hematuria ceased and the petitioner was discharged from the hospital. Dr. Shields continued to see the petitioner and on July 13, 1966, he found that the petitioner had sustained an inguinal hernia and on July 20, 1966, Dr. Shields performed surgery on the petitioner repairing the hernia. This procedure was successful and on October 1, 1966, Dr. Shields directed the petitioner to return to work for light duty, directing him to lift no more than twenty-five pounds.

These facts are not controverted. The petitioner insists that the hernia resulted from his injury of March 14, 1966, although it was not discovered until almost four months later, and that his injury resulted in hypertension which disabled him permanently to the extent of twenty-five per cent. As above suggested the Chancellor found in the petitioner's favor and decreed accordingly.

The assignments of error, which are substantially the same as the grounds of the motion for a new trial, are as follows:

"1. Because the findings of the trial judge are unsupported by material evidence.

"2. Because the judgment and decree of the court are contrary to the law and the evidence.

"3. Because the court erred in finding and decreeing that the injury to the petitioner, other than the hermaturia, arose out of and in the course of his employment.

"4. Because the court's findings of the hernia condition were based on evidence of conjecture, speculation and surmise and not in compliance with T.C.A. 50-1009.

"5. Because the court's finding of hypertension was based on evidence of lay testimony, which testimony was completely discredited by the testimony of experts, Dr. John Shields and Dr. John M. Bryan.

"6. Because the court erred in finding the petitioner was 25% disabled.

"7. Because the court erred in overruling the motion for a new trial."

(1) The employer and his insurer argue that the facts relating to the hernia do not meet the requirements of Section 50-1009, T.C.A., and that it, therefore, is not compensable. The pertinent part of Section 50-1009, T.C.A., is as follows:

"*Hernia.*—In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the court:

"First. That there was an injury resulting in hernia or rupture.

"Second. That the hernia or rupture appeared suddenly.

"Third. That it was accompanied by pain.

"Fourth. That the hernia or rupture immediately followed the accident.

"Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed."

In the case before us the petitioner felt pain immediately and because of his injury placed himself in the hands of his physician two days later. He continued to be examined and treated from time to time until the hernia was discovered and repaired in July. The question then is whether the hernia developed with sufficient promptness to meet the requirement of the statute. The Court's opinion by Chief Justice Neil in *Etter v. Blue Diamond Coal Co.,* 187 Tenn. 407, 215 S.W.2d 803, contains the following language:

"While our statute expressly requires proof 'that the hernia or rupture appeared suddenly,' or 'immediately followed the accident,' we would have to give it a very narrow construction to hold that the hernia must appear instantaneously, or at the moment of the accident. In order to remove the question of the causes of a hernia from the field of speculation the legislature conceived it to be important to write into the act the proviso: 'That the hernia or rupture did not exist prior to the accident for which compensation is claimed.' When this is read in connection with other sections, to which we have referred, to wit that 'the hernia * * * appeared suddenly' or 'immediately followed the accident,' these expressions must be construed to mean that a hernia is 'immediate' and compensable if it appears so soon after the injury that it would not be possible to attribute it to any other cause."

In the same opinion the following paragraph also appears:

"The word 'immediately' must gather its meaning from its application. It is not a word of absolute significance. It depends upon the circumstances and events in connection with which it is used. Happening 'suddenly' or 'immediately following' does not mean happening instantaneously. *Lovell v. Williams Bros.*, Mo.App., 50 S.W.2d 710, 713. When our legislature used the word 'suddenly' in Code Section 6892a, here invoked, it meant that the hernia must have developed without warning, or, as in *Lovell v. Williams Bros.*, supra, 'without previous notice'; and that it is not to be attributed to any pre-existing cause."

In this case it has been shown that because of the nature of this particular hernia its development occurred

slowly and it could not be discovered at the time of, or immediately after, the petitioner's injury. In these circumstances we hold that the statutory requirements that the hernia appear suddenly and that it immediately follow the accident are complied with.

■ (2) Then the other question relates to the petitioner's claim that he sustained a twenty-five per cent partial disability as a result of the accident because of hypertension that he suffered as a consequence of it. This insistence is not supported by medical evidence. The petitioner has offered no proof other than his own testimony that he suffers a permanent partial disability because of hypertension resulting from his accident. Both Dr. Shields and Dr. Bryan testified at length concerning their examination and treatment of the petitioner and neither suggested that he now suffers disabling hypertension. Such a condition is one that must be established if it is established at all, by expert medical testimony. See *Magnavox Company of Tenn. v. Shepherd,* 214 Tenn. 321, 379 S.W.2d 791. Dr. Shields testified that he could not associate hypertension with the injury. The petitioner's effort to prove permanent partial disability must fail for want of material evidence.

We therefore overrule the first four assignments of error but must sustain the fifth and sixth assignments. We modify the decree of the Chancellor to the extent that we disallow the twenty-five per cent partial permanent disability after October 1, 1966, the day on which the petitioner returned to work. We decree one-half of the costs against the petitioner and one-half against the employer and his insurer.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.

## OPINION ON PETITION TO REHEAR

The petitioner by his petition to rehear asked us to remand the case to the Chancery Court in order that he may introduce additional medical evidence. In the hearing before the Chancellor he introduced the testimony of three physicians who attended him after his injury. We feel that he had ample opportunity to prove his disability.

We overrule the petition to rehear.